DANIEL L. RIVERA MIRANDA, INSPECTOR DE PROTOCOLOS DEL TRIBUNAL SUPREMO DE PUERTO RICO, peticionario y recurrido, *v.* CIRO ÁNGEL BETANCOURT, NOTARIO PÚBLICO, requerido y peticionario.

*Número:* O-80-13 *Resuelto:* 10 de junio de 1981

*Ciro A. Betancourt, pro se;* el Inspector recurrido no compareció.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En su examen de los protocolos correspondientes a los años 1974 y 1976 del notario Sr. Ciro Ángel Betancourt, el Inspector de Protocolos anotó como faltas las siguientes:

I Que en la escritura Núm. 60 de 1974 sobre cancelación de hipoteca a la orden, comparece Alberto Hernández a cancelar dos pagarés hipotecarios cuyo último endoso figura hecho por el Banco Crédito y Ahorro Ponceño a favor de un anterior poseedor de apellido Gibbs;

II Que en la escritura Núm. 70 de 1974 de constitución de régimen de propiedad horizontal se valora la propiedad en $245,000 y aparece del mismo documento que el inmueble está afecto a tres hipotecas que garantizan $479,339.00; y

III Que en la escritura Núm. 8 de 1976 también constitutiva de régimen de propiedad horizontal se valora el inmueble en $5,019,560.00, que consta allí gravado con cuatro hipotecas para un total de $6,675,907.00.

En los originales de estas constituciones de condominio el notario canceló sellos de rentas internas a base del valor asignado a la propiedad, y no de la cifra mayor importe de la hipoteca. Surgieron discrepancias entre notario e Inspector al sostener éste que según *Dominici* v. *Registrador,* 59 D.P.R. 764 (1942), no siendo Hernández endosatario del pagaré, carecía de facultad para cancelarlo; así como en lo

relativo al valor base sobre el que opera el arancel de derechos devengados por documentos notariales, exigiendo el inspector del notario una deficiencia en sellos correspondiente a la mayor cuantía de la carga hipotecaria. [1]

La controversia fue sometida al Tribunal Superior mediante informe del inspector, según ordenado en el Art. 38 [2] de la Ley Notarial, 4 L.P.R.A. sec. 1038, y el Tribunal dictó resolución el 28 noviembre, 1979 (notificada 2 enero, 1980) sosteniendo al Inspector de protocolos y ordenando al notario que subsane el alegado error de falta de capacidad en la cancelación de los pagarés hipotecarios y corrija la deficiencia en sellos de rentas internas de las escrituras de propiedad horizontal. El notario recurrió en tiempo mediante *certiorari* y debidamente informados por el expediente de la posición de ambas partes, procedemos a resolver con la prontitud que facilita la Regla 50 de nuestro Reglamento.

 La función del Inspector de Protocolos autorizada por el Art. 38 de la Ley Notarial, *ante,* no se equipara a la facultad de calificación de títulos que tiene el Registrador de la Propiedad. La inspección del protocolo se ciñe fundamentalmente a la forma y manera en que lo lleva el notario; y si bien la ley instruye al Inspector constatar la observancia por el notario de las disposiciones de la Ley

---

[1] La alegada deficiencia en sellos: $117.00 en la escritura párrafo II; y $828.00 en la del párrafo III, *supra.*

[2] En lo que concierne a este caso, dispone el Art. 38:

"Si durante el curso del examen surgiera cualquier divergencia de criterio entre el inspector de protocolos y el notario, en relación con la forma y manera de llevar éste sus protocolos y registros de affidávits, o con respecto al cumplimiento de cualquiera de las otras disposiciones de este Capítulo o de cualquiera otra ley de Puerto Rico, incluyendo las de arancel notarial, el inspector deberá hacerlo constar en su informe haciendo una breve exposición de los hechos y de las razones en que se funda la controversia, y dicho informe será remitido a la sala del Tribunal Superior del lugar en que ejerza el notario para que oyendo al inspector y al notario resuelva la controversia, pudiendo su resolución revisarse por el Tribunal Supremo mediante recurso de *certiorari* interpuesto dentro de diez (10) días después de notificado."

Notarial "o de cualquier otra ley de Puerto Rico" incluyendo las de arancel, su intervención en este amplio campo es de prudente iniciativa, sin adentrarse en el área de derecho substantivo, y menos aún asumir función interpretativa o declarativa del Derecho. *Soto de Bernier* v. *Rivera Cestero*, 106 D.P.R. 35, 37 (1977).

■ Así delimitada su competencia, el Inspector recurrido no debió cuestionar el método seguido por el Notario para cancelar pagarés a la orden garantizados con hipoteca y trasmisibles de su faz por endoso. La corrección de este procedimiento es materia que en nuestro ordenado sistema de derecho inmobiliario corresponde determinarla al Registrador de la Propiedad. El notario recurrente en su argumento correctamente excluye estos pagarés de la regla de *Dominici* v. *Registrador*, supra, porque según consta en la escritura Núm. 70 cuestionada, el endoso final de los pagarés por el Banco Crédito al deudor Gibbs fue restringido "al solo propósito de cancelación" lo que extinguió su negociabilidad a tenor de los Arts. 389(1) y 400(3) del Código de Comercio, 19 L.P.R.A. secs. 67(1) y 78; y por dicho impedimento de endoso restrictivo el otorgante Hernández advino dueño de los pagarés por cesión que en la citada escritura hiciese a su favor el último endosatario y anterior dueño de la casa afecta a dichas obligaciones. Están presentes en esta operación elementos de interpretación y aplicación del derecho sustantivo, así como de distinción de la situación fáctica documental en *Dominici*, supra, que rebasa el ámbito de intervención con el protocolo del notario señalado al Inspector.

---

[3] Sección 67(1)

"Es restrictivo el endoso que—

"1. Prohíba otra negociación del documento; . . . ."

Sección 78

"Un documento que es negociable en su origen continúa siéndolo, hasta que sea endosado restrictivamente o sea solventado mediante pago o de otro modo."

█ La fiscalización del cumplimiento por el notario de las disposiciones del arancel notarial es encomienda específica que al Inspector de Protocolos hace el Art. 38 de la Ley Notarial. Fue propio y en orden su interés en la forma en que el notario calculó los derechos que devengaban las escrituras constituyentes de régimen de propiedad horizontal, y acertado su criterio. En lo referente a este caso dispone la Ley sobre cobro de derechos por instrumentos públicos, 4 L.P.R.A. sec. 851:

> En cada documento e instrumento original, autorizado por notario público que haya de ser protocolizado, y sus copias, se fijarán y cancelarán sellos de rentas internas de los siguientes valores o denominaciones:
>
> (a) .　　　.　　　.　　　.　　　.　　　.　　　.　　　.
> (b) .　　　.　　　.　　　.　　　.　　　.　　　.　　　.
> (c) .　　　.　　　.　　　.　　　.　　　.　　　.　　　.
> (d) .　　　.　　　.　　　.　　　.　　　.　　　.　　　.
> (e) Cuando la cuantía exceda de $5,000, un dólar por los primeros $1,000 y cincuenta centavos adicionales por cada mil dólares o fracción de mil dólares por el original; y cincuenta centavos los primeros $1,000 y veintincinco centavos adicionales por cada $1,000 o fracción de mil dólares por cada copia.

La deficiencia en sellos apuntada por el Inspector arranca de su determinación de tomar como cuantía-base del cómputo de derechos de arancel la suma total de gravámenes hipotecarios que tanto en una como en otra de las citadas escrituras a que nos referimos bajo los números II y III, sobre constitución de condominio, excede la valoración del inmueble por los comparecientes en la escritura que es también declaración de obra nueva.

█ Estimó el recurrido que la suma de los gravámenes que soporta el inmueble es más representativa de su valor económico, que el expresado en la escritura y se funda en *Empire Life Ins. Co.* v. *Registrador*, 105 D.P.R. 136 (1976). Esta decisión versa sobre interpretación del arancel del Registro de la Propiedad, mas presente en ambos la

cuestión común de un arancel o derecho impuesto por el Estado a cambio de una garantía de autenticidad y legitimación de actos y contratos en el tráfico jurídico, debe regir para el arancel notarial la norma de *Empire Life*, ante, en que busca apoyo la intervención del recurrido Inspector de Protocolos: es más representativa del valor de un inmueble la suma total de las hipotecas a las que sirve de garantía que el valor nominal escogido exclusivamente por el dueño en la escritura de edificación u obra nueva con que se inicia su historial documental y registral. Usualmente es mejor índice del valor real de un derecho el obtenido en el libre entrejuego de la contratación privada, el comercio y las fuerzas económicas que el fijado unilateralmente por quien en forma directa o indirecta vendrá obligado a pagar contribución sobre la propiedad afectada.

En el presente caso hay extensa desproporción entre la valoración convencional en las escrituras de los inmuebles constituidos en propiedad horizontal: $245,000 uno, y $5,019,560.00 el otro; y el importe de su carga hipotecaria: $479,339.00 en el primero; y $6,675,907.00 en el segundo, diferencias de cuarentiocho puntos de por ciento (48%) en la escritura de referencia II y de veinticinco puntos de por ciento (25%) en la escritura de referencia III, *supra.*

■ La Ley Notarial señala al Inspector de Protocolos, de modo específico, como una de sus áreas de intervención la relativa al cumplimiento por el notario de las disposiciones del arancel notarial. En descargo de esa responsabilidad, al confrontarse con la valoración de la propiedad que muchas veces es resultado de un complicado proceso de comparación, ajuste e integración de variados y mutantes factores económicos, su más confiable base para determinar el valor real cuando se da la discrepancia que motiva este recurso, es la suma total de hipotecas y demás derechos a que aparece afecto el inmueble, que reflejen su capacidad económica y potencial de garantía al tiempo y en el

documento de su declaración como obra nueva, o en el de adscripción al regimen de propiedad horizontal.

*Se dictará sentencia que revocará la de instancia en lo referente a la cancelación del pagaré hipotecario; y la confirmará en cuanto a facultad en el Inspector de Protocolos para intervenir con la valoración de la propiedad en documento público sujeto al arancel notarial.*

El Juez Presidente Señor Trías Monge no intervino. El Juez Asociado Señor Negrón García concurrió en el resultado.