EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2013 TSPR 39 |
| Lcdo. Roberto J. García Cabrera;<br>Lcda. Yvelisse Fingerhut Mandry;<br>Lcdo. Juan J. Ramírez-Rivera | 188 DPR ____ |

Número del Caso: AB-2007-309


Fecha: 8 de marzo de 2013


Abogado de la parte querellada:

      Lcdo. Jorge P. Sala Colón
      (abogado de la Lcda. Fingerhut Mandry)


Oficina de Inspección de Notarías:

      Lcda. Lourdes Quintana Llorens
      Directora


Materia: Conducta Profesional – La suspensión será efectiva una vez advenga final y firme la Sentencia conforme a la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.
(La suspensión de la Notaría del Lcdo. Roberto J. García Cabrera advino final y firme el 9 de abril de 2013)


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. Roberto J. García        AB-2007-309
Cabrera; Lcda. Yvelisse
Fingerhut Mandry; Lcdo. Juan
J. Ramírez-Rivera

PER CURIAM

En San Juan, Puerto Rico, a 8 de marzo de 2013.

El descuido de dos notarios en procurar por el fiel cumplimiento de las leyes, nos obliga a sancionarles en su práctica notarial. La historia sería distinta si hubieran cumplido con lo que exige el Art. 2 de la Ley Notarial de Puerto Rico, Ley Núm. 75 del 2 de julio de 1987, 4 L.P.R.A. sec. 2001 et seq., y el Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

I

El quejoso Javier Enrique Mandry Mercado presentó dos quejas juramentadas el 24 de septiembre

de 2007 ante el Tribunal de Primera Instancia, Sala Superior de Ponce, en contra de los notarios Lcdo. Roberto J. García Cabrera, el Lcdo. Juan J. Ramírez-Rivera y la Lcda. Yvelisse Fingerhut Mandry. En sus quejas denunció que, como parte de la recopilación de pruebas que necesitaba para solicitar la liquidación de los bienes de la Sucesión Pastor Mandry Mercado, se percató de la existencia de varias escrituras que considera cuestionables.

Particularmente, en la Queja 1 señaló la Escritura Núm. 29 sobre Poder General de 1 de diciembre de 2001 que se otorgó ante el licenciado García Cabrera. En esta escritura la Sra. María del Carmen Llombart Bas y su hija, de 14 años de edad, comparecieron para otorgar un poder a favor de Yvelise Helena Mandry Nones, su hija Yvelise Helena Fingerhut Mandry, y Salvador Eduardo Mandry Nones.[1] El amplio poder concedido les facultó a representarles en la disposición y adquisición de bienes muebles e inmuebles; recibir pago por deudas a su favor; dar y tomar dinero en préstamo; extraer dinero de sus cuentas; administrar sus bienes y arrendarlos; y representarles ante todos los tribunales, entre otras funciones concedidas. La única limitación impuesta es que se trate de bienes muebles e inmuebles localizados en Puerto Rico. Al momento de la

---

[1] Yvelise Helena Mandry Nones y Salvador Eduardo Mandry Nones son tíos de la señora Llombart Bas. Mientras, Yvelise Helena Fingerhut Mandry es su prima. Nótese que se escriben aquí los nombres como figuran en la Escritura Núm. 29.

otorgación del poder las poderdantes residían en el estado de la Florida. Como apoderados sustitutos, por si surgía algún conflicto de interés, se designó a Luis Morales Ramírez y Nydia Franceschini Rodríguez.

En la Queja 1 se subrayó que, a pesar de que una menor de edad figuró como compareciente, el poder otorgado en ese documento se utilizó para confeccionar otras dos escrituras. Se trata de la Escritura Núm. 3 de 28 de febrero de 2005, otorgada ante el mismo notario, con el propósito de hacer una Cesión a Cambio de Deuda. La otra escritura es la Núm. 4 de 28 de febrero de 2005, sobre Segregación y Compraventa. Añadió el señor Mandry Mercado que, al momento de presentar la queja, ninguna de las dos escrituras en que se dispuso de bienes inmuebles se había inscrito en el Registro de la Propiedad.

El quejoso denunció que una menor de edad no puede ser compareciente en la otorgación de una escritura pública y que no consta que se pidiera autorización del Tribunal para disponer de sus bienes. Además, indicó que la licenciada Fingerhut Mandry, designada como apoderada, conocía de la minoridad de la otorgante y tenía interés en la comunidad pro indiviso.

El 27 de febrero de 2008 el licenciado García Cabrera solicitó la desestimación de la queja. Indicó que el Poder General en que compareció la menor no puede impugnarse por una persona que no estuvo presente en el otorgamiento. Además, justificó la presencia de la menor con las Reglas

27 y 37(d) del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, bajo el fundamento de que compareció como persona con interés sobre el documento a otorgarse. Como su madre, persona con la patria potestad y custodia sobre la menor, estuvo presente en la otorgación del Poder entendió que el acto fue transparente. Finalmente, indicó que cometió un error mecanográfico al utilizar la palabra "consentimiento" y que debió escribir "conocimiento". El quejoso, en su réplica, reiteró sus señalamientos iniciales contra el notario García Cabrera. Además, alegó que aunque no fuera compareciente en la escritura en que participó la menor de edad, fue víctima de un patrón de hechos similares mediante el cual sus padres se apoderaron de su derecho hereditario para hacer transacciones en perjuicio suyo.

Por su parte, la licenciada Fingerhut Mandry compareció a través de su abogado, Jorge P. Sala, el 7 de marzo de 2008. En síntesis, atribuyó las quejas que presentó el señor Mandry Mercado a una disputa familiar en que se le relevó de la vicepresidencia de una de las corporaciones de la sucesión, Rufina Mandry, Inc. Destacó que ninguno de los señalamientos en su contra se derivan de actuaciones como notario, sino que su comparecencia en la otorgación de instrumentos fue como apoderada de la Sra. Llombart Bas y su hija menor de edad o en su carácter personal. Aseguró que desde 1977 ha representado los intereses de la comunidad de forma intachable, con el consentimiento de todos sus miembros.

La Queja 2 cuestiona la validez de la Escritura Núm. 4 de Ámbito de Poderes, que se otorgó ante el notario Ramírez-Rivera el 25 de febrero de 1998. El quejoso nuevamente señaló que entre las comparecientes figura la hija menor de edad de María del Carmen Llombart Bas, quien a la fecha del otorgamiento tenía 10 años de edad, y su otra hija, que en ese momento tenía 20 años de edad. Señaló, además, que para dar vida a ese poder se utilizó, entre otros, otro poder que él otorgó a favor de sus padres luego de emanciparle. Se opuso a tal acción por entender que no puede utilizarse un poder para crear otro poder "con vigencia absoluta e irrevocable", sin designar quién sería el apoderado.

También denunció que sus padres lo emanciparon el 19 de agosto de 1992, cuando tenía 18 años de edad, mediante la Escritura Núm. 21 de 19 de agosto de 1992, que se otorgó ante el notario Ramírez-Rivera. Seis meses después, ante el mismo notario, otorgó el Poder General a favor de sus padres, mediante la Escritura Núm. 28 de 28 de febrero de 1993, que les permitió enajenar terrenos y bienes que eran de su propiedad. Entiende que eso dio paso a "múltiples atropellos a mis derechos civiles", por lo que pidió que se examinara la corrección de esas actuaciones. Sin embargo, reconoció que convalidó esos actos mediante una escritura que otorgó en Nueva Jersey y que protocolarizó el notario Ramírez-Rivera mediante la Escritura Núm. 6 de 30 de abril de 1998.

Además, en la Queja 2 mencionó dos casos de expropiación forzosa de propiedades de la sucesión, en los que, por un supuesto error del Registro de la Propiedad, no figuró como demandado. Sin embargo, indicó que la licenciada Fingerhut Mandry lo incluyó como parte de la sucesión en los documentos que sometió, sin solicitar su autorización para representarle. En su queja aseguró que la licenciada cobró el dinero que le correspondía a él, y le dio $5,000 de los $13,500 que debieron asignársele. Sin embargo, rechazó haber autorizado a la licenciada Fingerhut Mandry a disponer de ese dinero.

El notario Ramírez-Rivera aceptó lo que se alegó sobre la hija menor de edad de la señora Llombart Bas. En cuanto a la escritura denominada Ámbito de Poderes, dejó en manos de los tribunales determinar su validez. Defendió la protocolarización del documento en que el quejoso, siendo mayor de edad, ratificó los poderes que otorgó cuando aún era un menor emancipado y el uso posterior para otros documentos públicos.

A la segunda queja, la licenciada Fingerhut Mandry, por su parte, reiteró que no compareció como notario a ninguna de las escrituras en controversia. Rechazó que una menor de edad fuera suscribiente de una de las escrituras. En cuanto a los casos de expropiación forzosa, indicó que los miembros de la comunidad le apoderaban verbalmente para representarla ante los tribunales. Además, destacó que el tribunal avaló la forma en que se emplazó en los casos de

expropiación. Añadió que el quejoso tenía conocimiento de que ella representaba a la comunidad y que estaba autorizada para retirar los fondos. La licenciada aseguró que remitió los fondos a los administradores de la comunidad, entre los que se encontraba el quejoso, para que lo distribuyeran.

El 2 de mayo de 2008 la Secretaria de este Tribunal, Lcda. Aida Ileana Oquendo Graulau, refirió el expediente de las quejas a la Oficina de Inspección de Notarias (ODIN) para que lo investigara y presentara el informe correspondiente ante nos.

Como parte del proceso de investigación, la ODIN solicitó al licenciado García Cabrera copia de las cuatro escrituras que otorgó, y que se mencionan en la Queja 1. El 20 de enero de 2011 la ODIN reiteró el requerimiento, que envió por correo certificado. El licenciado García Cabrera solicitó una prórroga para presentar los documentos, pero nuevamente incumplió. El 20 de mayo de 2012 la ODIN le concedió un término final e improrrogable que venció el 25 de mayo de 2012. No compareció.

Por otro lado, también el 14 de diciembre de 2010 la ODIN solicitó al licenciado Ramírez-Rivera copia de cuatro de las escrituras enumeradas en las quejas, que debía presentar en un término de 10 días. Ante su incumplimiento, se reiteró el requerimiento mediante correo certificado el 20 de enero de 2011. El 17 de febrero de 2011 el licenciado Ramírez-Rivera acudió a las oficinas de la ODIN para hacer

constar que no entregaría copia de las escrituras solicitadas. Se justificó en supuestas experiencias de compañeros abogados. La ODIN contestó sus expresiones mediante un correo electrónico, en que requirió hacer constar su posición por escrito. Además, le dio un plazo adicional hasta el 25 de mayo de 2012. Finalmente, el 29 de mayo de 2012 entregó las copias requeridas.

La ODIN no hizo requerimientos a la licenciada Fingerhut Mandry, pues no figuró como notario en ninguna de las escrituras en disputa.

El 25 de julio de 2012 la directora de ODIN, la Lcda. Lourdes I. Quintana Lloréns, presentó su informe ante nos. En sus determinaciones de hechos, la ODIN señaló que el notario Ramírez-Rivera otorgó la escritura de Ámbito de Poderes, en la que dio fe de la capacidad de los otorgantes, a pesar de que figuraban dos menores de 20 y 10 años como comparecientes. Con esa escritura se pretendió crear un pacto de indivisión para la comunidad de bienes que surgió al extinguirse la Sociedad Civil y Agrícola de Mario Mercado e hijos sin que se designara a ningún apoderado. La ODIN apuntó que esa figura no existe en nuestro ordenamiento jurídico. Además, advirtió que esa escritura presenta visos de nulidad por el mero hecho de que comparecieron dos menores de edad, sin que mediara intervención judicial.

La ODIN también señaló que en el Poder General que se otorgó el 1 de diciembre de 2001 ante el notario García

Cabrera figuran como comparecientes la señora Llombart Bas y una hija menor, quien para entonces tenía 14 años. Ese poder se utilizó para otorgar la Escritura Número 3 sobre Cesión a Cambio de Deuda y la Escritura Número 4 sobre Segregación de Compraventa, ambas del 28 de febrero de 2005. No medió autorización judicial para esas transacciones sobre los bienes de la menor, que incluía la venta de un inmueble de dos cuerdas valorado en $18,000.

Además, la ODIN describió que el notario García Cabrera otorgó un Acta Aclaratoria Número 7 el 11 de octubre de 2002. Entre las escrituras que pretendió aclarar se encuentra una de 2 de noviembre de 1998, ante el notario Ramírez-Rivera, identificada como Escritura de Compraventa e Hipoteca Núm. 17. En el acta figura como compareciente la señora Llombart Bas, de por sí y en representación de su hija menor, de 14 años de edad. Tampoco medió autorización judicial para la disposición del bien.

Luego de analizar el derecho aplicable, la Directora de la ODIN recomendó que se refiriera a la Oficina del Procurador General la conducta de la licenciada Fingerhut Mandry para determinar si hubo violaciones al Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Específicamente, recomendó que se evaluara su conducta en torno a su representación, si alguna, sobre el quejoso en los casos de expropiación. Además, porque figuró como apoderada de una menor de edad en escrituras públicas que dispusieron sobre sus bienes, sin que mediara autorización judicial. Como

abogada y notaria, la licenciada Fingerhut Mandry debió advertir de esta situación. Se recomendó referir su caso al Procurador General porque sus actuaciones no fueron notariales, sino como abogada y apoderada, lo que trasciende el marco de acción de la ODIN.

Sobre el notario Ramírez-Rivera, la ODIN señaló que autorizó la escritura denominada Ámbito de Poderes, en que figuraron dos menores de edad como comparecientes, en violación a las disposiciones del Código Civil. Además destacó que esta actuación puede conllevar a la impugnación de varias transacciones que se realizaron posteriormente, y que utilizaron ese poder para realizarse.

En cuanto al notario García Cabrera, la ODIN señaló que autorizó una escritura de Poder General, Núm. 29 de 1 de diciembre de 2001, que también carece de validez jurídica porque una menor de 14 años figura como compareciente. No le resultaron convincentes los argumentos del notario García Cabrera de que la menor acudió como figura con interés pues del escrito se desprende que figuró como poderdante. Fue ese el poder que el notario García Cabrera utilizó para crear dos escrituras adicionales, la Núm. 3 sobre Cesión de Deuda y la Núm. 4 sobre Segregación y Compraventa, que dispusieron de bienes de la menor sin autorización judicial.

La ODIN concluyó que ambos notarios violaron el Canon 18 de Ética Profesional, que versa sobre el deber de competencia. 4 L.P.R.A. Ap. IX. Además, en su informe la

ODIN hizo mención del Canon 35, que exige de los abogados una conducta honesta y sincera. 4 L.P.R.A. Ap. IX.

Dos de los abogados y el quejoso replicaron el informe. El licenciado García Cabrera solicitó su desestimación bajo el argumento de que la ODIN aprobó su protocolo correspondiente al 2001, que se inspeccionó entre el 17 de julio y 2 de agosto de 2012. Entiende que la aprobación de la ODIN certifica que los instrumentos son válidos, e impide que se inicie un procedimiento disciplinario. Se basó en los Arts. 63 y 65 de la Ley Notarial. También apuntó a la Regla 82 del Reglamento Notarial para plantear una violación al debido proceso de ley, pues el proceso en su contra inició con una queja y no con un informe de ODIN.

La licenciada Fingerhut Mandry compareció para reiterar la corrección de sus actuaciones en los casos de expropiación cuestionados. En cuanto a su comparecencia como apoderada a la Escritura Núm. 3 sobre Cesión a Cambio de Deuda de 28 de febrero de 2005, detalló que se trató de la ratificación de un negocio jurídico de 1994, que otorgó el padre de la menor, Pastor Francisco Mandry Aparicio en 1994, antes de fallecer. Por ello, interpretó que la autorización judicial resultaba innecesaria. Además, indicó que el quejoso no tiene legitimación para cuestionar esa escritura. La licenciada Fingerhut Mandry también llamó a la atención que la ODIN demoró 5 años en presentar su informe y recomendaciones. Alega que la situación la ubica

en un estado de indefensión y vulnera su derecho al debido proceso de ley.

## II

El Art. 2 de la Ley Notarial, 4 L.P.R.A. sec. 2002, precisa lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para **dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen**, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, **dándole forma legal**, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública del notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. [Énfasis suplido].

4 L.P.R.A. sec. 2002.

De ahí se desprende que el notario público es, al mismo tiempo, funcionario público y profesional del Derecho. Por un lado, en la esfera de los hechos, da fe de lo que ve, oye y percibe por sus sentidos. Por otro lado, como jurista, autentica y formula un juicio, da fuerza probatoria a las declaraciones de voluntad de las partes en instrumentos y documentos públicos que debe redactar conforme a las leyes. In re Martínez Almodóvar, 180 D.P.R. 805, 815 (2011); In re Cruz Cruz, 126 D.P.R. 448, 453 (1990). Cuando un notario da fe pública asegura que el documento que autoriza cumple con todas las formalidades de ley, formal y sustantivamente, que es legal y verdadero, y que se trata de una transacción válida y legítima. In re Vázquez Pardo, 185 D.P.R. 1031, 1041 (2012); In re Martínez

Almodóvar, supra, pág. 816; In re Feliciano Ruiz, 117 D.P.R. 269, 275 (1986).

Cuando autoriza una escritura pública, el notario tiene que dar fe expresa de su conocimiento personal de los otorgantes o de haberse asegurado de su identidad por los medios establecidos. Además, tiene que dar fe de que los otorgantes cuentan con la capacidad legal necesaria para realizar el acto o contrato que se otorga. Art. 15 (e) de la Ley Notarial de Puerto Rico, supra, 4 L.P.R.A. sec. 2033(e).

> El ámbito de la capacidad inextricablemente guarda correspondencia lógica con el consentimiento de los contratantes, sin el cual no hay contrato. La regla general es que su existencia surja con la comparecencia y presencia de la persona ante el notario. La excepción es el mandato o poder. "El contrato celebrado a nombre de otro por quien no tenga su autorización o representación legal será nulo, a no ser que lo ratifique la persona a cuyo nombre se otorgue antes de ser revocado por la otra parte contratante." Art. 1211, Código Civil, 31 L.P.R.A. sec. 3376.

> In re Feliciano Ruiz, supra, pág. 276.

En cuanto a la figura del mandato, el Código Civil señala que es un contrato mediante el cual una persona se obliga a prestar algún servicio o a hacer alguna cosa por cuenta o encargo de otra. Art. 1600 del Código Civil, 31 L.P.R.A. sec. 4421. Un notario no está obligado a aceptar la calificación que de los otorgantes haya hecho otro notario al autorizar un poder a favor de quien ahora comparece para realizar un negocio jurídico a nombre del poderdante. In re Feliciano Ruiz, supra, pág. 276, esc. 3.

Para confeccionar un contrato válido, el Art. 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3391, enumera el consentimiento de los contratantes, el objeto cierto y la causa válida como requisitos esenciales para la validez de los contratos. Los menores de edad no emancipados no tienen capacidad para consentir, a menos que estén entre los 18 y 21 años y se dediquen al comercio o industria. Art. 1215 del Código Civil, 31 L.P.R.A. sec. 3402. Un menor que no tiene capacidad de consentir, no tiene capacidad para otorgar un contrato.

Además de que un menor carece de capacidad para contratar, el Código Civil requiere una autorización judicial antes de que sus padres o tutores enajenen los bienes muebles o inmuebles pertenecientes al menor, si su valor excede los $2,000. Art. 214 del Código Civil, 31 L.P.R.A. sec. 788. Para obtener la autorización judicial es requisito que se acredite al tribunal competente la necesidad o utilidad que el acto tiene para el menor. Art. 614 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2721.

La autorización judicial suple la falta de capacidad del menor para consentir a la transacción. Por eso tiene que obtenerse previo a la transacción, pues una concedida posteriormente no convalida el acto. Vilariño Martínez v. Registrador, 89 D.P.R. 598, 602-603 (1963). Una transacción en que se enajenen los bienes de una persona incapaz de consentir, como un menor no emancipado, sin la requerida

autorización judicial, hace del negocio uno nulo. In re López Olmedo, 125 D.P.R. 265, 278 (1990). Además, constituye un defecto insubsanable. First Fed. Savs. v. Nazario et als., 138 D.P.R. 872, 885 (1995).

Por otro lado, la Ley Notarial de Puerto Rico, supra, aspira a que el notario desempeñe su profesión con probidad, la competencia y destreza jurídica necesaria, y la diligencia, el cuidado y la observación del valor ético de la verdad, que imprime al contenido de los documentos que otorga. In re Avilés, Tosado, 157 D.P.R. 867, 889 (2002); In re Filardi Guzmán, 144 D.P.R. 710, 719-720 (1998). La importancia que tiene la fe pública notarial en el tráfico de bienes jurídicos, exige que se ejerza con extremo cuidado, esmero, diligencia y estricto celo profesional. In re Vázquez Pardo, supra, pág. 1042; In re Martínez Almodóvar, supra, pág. 815; In re Rivera Vázquez, 155 D.P.R. 267, 277-278 (2001). Hemos reiterado que la función del notario trasciende la de un autómata legalizador de firmas para penetrar en el campo de la legalidad de la transacción sobre la que estampa su firma, sello y rúbrica. In re Martínez Almodóvar, supra, págs. 817-818.

Los notarios, por el carácter público de su función, tienen que ser sumamente cautelosos en el ejercicio de su práctica, y tener presente en todo momento las consecuencias nefastas que su negligencia puede tener sobre los negocios jurídicos. In re Muñoz Fernos, 184 D.P.R. 679,

685 (2012); In re Rodríguez Báez, 129 D.P.R. 819, 823 (1992). Por ello hemos concluido que la contravención de alguna ley por parte de un notario constituye, al mismo tiempo, una violación del Canon 18 de Ética Profesional, supra. Véase, además, In re Muñoz Fernos, 184 D.P.R. 679, 685 (2012); In re Aponte Berdecía, 161 D.P.R. 94, 106 (2004).

El Canon 18 de Ética Profesional, supra, enumera entre los deberes del abogado defender con diligencia los intereses del cliente, desplegar en cada caso su más profundo saber y habilidad y actuar en aquella forma que la profesión jurídica en general estima adecuada y responsable. No advertir y orientar a los otorgantes de un documento público que se requiere de una autorización judicial para enajenar un inmueble constituye una falta al deber de competencia que establece el Canon 18 de Ética Profesional, supra. In re Cruz Mateo, 171 D.P.R. 781, 787 (2007).

Además, el Canon 35 de Ética Profesional, supra, exige de los abogados una conducta sincera y honrada. También le requiere ajustarse a la sinceridad de los hechos cuando examine testigos, redacte afidávits u otros documentos, y presente sus causas. No es necesario que se falte a la verdad deliberadamente, o con intención de defraudar o engañar para infringir este canon. Lo fundamental es que se falte a los valores de honradez y veracidad que son pilares de la profesión legal. In re Ojeda Martínez, 185 D.P.R.

1068, 1075 (2012); In re Nieves Nieves, 181 D.P.R. 25, 43 (2011). Cuando un notario hace una aseveración falsa en algún documento público, viola el Canon 35 aunque no tuviera la intención de faltar a la verdad. In re Ojeda Martínez, supra, pág. 1075; In re Tejada Rivera I, 155 D.P.R. 175, 182 (2001).

Todo notario tiene que dar estricto cumplimiento a la Ley Notarial de Puerto Rico y el Código de Ética Profesional. Su incumplimiento conlleva acciones disciplinarias. In re Martínez Almodóvar, supra, pág. 814.

III

La ODIN concluyó que los notarios García Cabrera y Ramírez-Rivera violaron el Canon 18 de Ética Profesional, supra, porque faltaron a su deber de diligencia en el momento en que otorgaron escrituras públicas en que figuraban menores de edad como comparecientes. Además, porque con esas escrituras se dispuso de bienes de menores de edad sin la requerida autorización judicial. Coincidimos con la ODIN en que ambos notarios violaron el Canon 12, supra.

Por un lado, el notario Ramírez-Rivera incluyó como compareciente a dos menores de edad en la otorgación de la Escritura Núm. 4 de Ámbito de Poderes de 25 de febrero de 1998. Aunque a la escritura también compareció su madre, la señora Llombart Bas, quien tenía su custodia y patria potestad, las menores figuraron como comparecientes, firmaron e iniciaron la escritura, a pesar de que se

reconoció que eran menores de edad. Además, el hecho de que estuviera presente su madre no subsana la falta de autorización judicial, requisito para la disposición de bienes de un menor cuyo valor sobrepase los $2,000. En esa escritura, entre muchas otras cosas, se autorizaba la enajenación de bienes inmuebles.

Estos hechos constituyen una violación del Canon 18 de Ética Profesional. El notario Ramírez-Rivera debió demostrar su diligencia e informar a los otorgantes que los menores de edad están incapacitados para consentir a la contratación. Aun cuando se interpretara que su madre les representó como persona con custodia y patria potestad, hacía falta autorización judicial para el negocio jurídico que se realizó. La escritura de Ámbito de Poderes autorizó la enajenación de bienes de la comunidad en que las menores formaban parte.

El notario también dio fe de la capacidad de los otorgantes de la escritura de Ámbito de Poderes para consentir al negocio jurídico contenido en la escritura. En la medida en que el notario dio fe de un hecho que no es veraz, también faltó al deber de sinceridad y honradez que impone el Canon 35.

En el caso del notario García Cabrera, también incluyó como compareciente a una menor de edad en la Escritura Núm. 29 de 1 de diciembre de 2001 sobre Poder General. Aunque el notario argumentó que su madre estuvo presente en el acto, y que la menor compareció como persona con interés, tampoco

nos convence. De una lectura completa de la escritura se desprende que a la menor se le presentó como compareciente. Toda la escritura está redactada en plural, además de que dio fe de conocer a ambas comparecientes y de su capacidad para consentir al acto. De hecho, este poder se utilizó para representar a la menor, al menos, en otras dos escrituras en que se dispuso de sus bienes sin autorización judicial.

Además, el notario redactó un Acta Aclaratoria el 11 de octubre de 2002, que entre otras cosas, pretendió hacer clara una Escritura de Compraventa e Hipoteca Núm. 17 de 2 de noviembre de 1998, que autorizó el notario Ramírez Rivera. Tampoco consta que se hubiera obtenido autorización judicial.

Estos hechos constituyen una violación al Canon 18 de Ética Profesional, supra, pues el notario debió advertir que la menor no podía figurar como compareciente en la otorgación de documentos públicos. También debió requerir autorización judicial para el otorgamiento de las escrituras Núm. 4, Sobre Segregación y Compraventa, y Núm. 3 sobre Cesión a Cambio de Deuda, ambas de 28 de febrero de 2005. Al dar fe de que las personas comparecientes en esos escritos tenían capacidad para realizar el negocio jurídico que allí se otorgaba, el notario García Cabrera también faltó al Canon 35 de Ética Profesional, supra, pues faltó a su deber de sinceridad y honradez. Por último, además de sus faltas notariales, el licenciado García Cabrera desoyó

los requerimientos de la ODIN para que presentara copia de las escrituras en controversia.

Los notarios plantearon que los poderes otorgados, cuya validez se cuestiona en las quejas, son válidos pues constan en el Registro de Poderes. Esa defensa es equivocada, pues el Registro de Poderes no tiene una función calificadora de los poderes que allí constan. Los inspectores de protocolos de la ODIN son los llamados a pasar juicio sobre las formalidades de los instrumentos públicos. In re Godínez Morales, 161 D.P.R. 219, 242 (2004). Por otro lado, los tribunales son los llamados a pasar juicio sobre el contenido de las escrituras otorgadas.

Por esta misma razón, no nos convence la defensa del notario García Cabrera de que las escrituras que otorgó son válidas porque la ODIN aprobó su protocolo. Los inspectores de protocolos no se adentran en el área de derecho sustantivo, ni pueden asumir una función interpretativa o declarativa del Derecho. Rivera Miranda v. Betancourt, 111 D.P.R. 147, 150 (1981); Soto de Bernier v. Rivera Cestero, 106 D.P.R. 35, 37-38 (1977). El notario, los tribunales y el Registrador de la Propiedad son los llamados a evaluar el contenido, los aspectos sustantivos y la interpretación de los instrumentos públicos otorgados. S. Torres Peralta, El Derecho Notarial Puertorriqueño, Edición Especial, San Juan, Publicaciones STP, Inc., 1995, sec. 18.4. Así pues,

le tocará a los tribunales, en su día, dilucidar la validez de los negocios jurídicos cuestionados.

Tampoco nos convence el reclamo del notario de que se incumplió con el debido proceso de ley por no seguirse lo establecido en los Arts. 63 y 65 de la Ley Notarial, supra. Este caso inició con una queja que se refirió a la ODIN, acorde con la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. XXI-B y las Reglas 81 y 82 del Reglamento Notarial, supra. Debemos recordar que la Regla 14(e) del Reglamento del Tribunal Supremo indica que, tras la presentación de un informe con recomendaciones por parte de la ODIN y la contestación del abogado objeto de la queja, este Foro podrá imponer las sanciones que estime pertinentes, sin necesidad de trámites ulteriores.

El informe de la Directora de la ODIN nos recomienda que censuremos enérgicamente al notario Ramírez-Rivera, y que suspendamos de la notaría al licenciado García Cabrera. La diferencia en la recomendación estriba en la negación del notario García Cabrera de entregar copia de las escrituras que solicitó la ODIN.

Acogemos la recomendación de la Directora de la ODIN. De esta forma, determinamos censurar enérgicamente al notario Ramírez-Rivera por sus faltas notariales. Al notario García Cabrera lo suspendemos por un período de un año de la práctica de la notaría por las fallas señaladas en las escrituras evaluadas, y por ignorar los requerimientos de la ODIN.

Por último, en cuanto a la licenciada Fingerhut Mandry, también acogemos la recomendación de la ODIN. De esta forma, referimos el informe a la Oficina del Procurador General para que investigue las actuaciones que señaló el quejoso Javier Enrique Mandry Mercado.

IV

Por las violaciones antes expuestas, censuramos enérgicamente al Lcdo. Juan J. Ramírez Rivera. Además, suspendemos por el período de un año de la práctica de la notaría al Lcdo. Roberto J. García Cabrera, ordenamos la incautación inmediata de su obra notarial y requerimos a la Oficina de Inspección de Notarías que nos informe sobre el resultado de su inspección. Por último, referimos el expediente de este caso a la Oficina del Procurador General para que evalúe si la conducta de la Lcda. Yvelisse Fingerhut Mandry constituyó violaciones al Código de Ética Profesional. 4 L.P.R.A. Ap. IX.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. Roberto J. García
Cabrera; Lcda. Yvelisse
Fingerhut Mandry; Lcdo. Juan
J. Ramírez-Rivera

AB-2007-309

SENTENCIA

En San Juan, Puerto Rico, a 8 de marzo de 2013.

Por los fundamentos expuestos en la Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, y por las violaciones antes expuestas, censuramos enérgicamente al Lcdo. Juan J. Ramírez Rivera. Además, suspendemos por el período de un año de la práctica de la notaría al Lcdo. Roberto J. García Cabrera, ordenamos la incautación inmediata de su obra notarial y requerimos a la Oficina de Inspección de Notarías que nos informe sobre el resultado de su inspección. Por último, referimos el expediente de este caso a la Oficina del Procurador General para que evalúe si la conducta de la Lcda. Yvelisse Fingerhut Mandry constituyó violaciones al Código de Ética Profesional. 4 L.P.R.A. Ap. IX.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta no intervino.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo