CP-2000-3                                                              1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                    | Querella        |
|                           | 2001 TSPR 136   |
|     Pedro J. Tejada Rivera | 155 DPR _____   |

Número del Caso: CP-2000-3

Fecha: 24/septiembre/2001

Oficina del Procurador General:

                          Lcda. Yvonne Casanova Pelosi
                          Procuradora General Auxiliar

Abogado de la Parte Querellada:
                          Lcdo. René Arrillaga Beléndez

Materia: Conducta Profesional
         (La suspensión es efectiva a partir del 11 de octubre de 2001, fecha en que se
         le notificó al abogado el Per Curiam y Sentencia)

     Este documento constituye un documento oficial del Tribunal Supremo que está
     sujeto a los cambios y correcciones del proceso de compilación y publicación
     oficial de las decisiones del Tribunal. Su distribución electrónica se hace
     como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Pedro J. Tejada Rivera

Conducta
Profesional

CP-2000-3

PER CURIAM

San Juan, Puerto Rico, a 24 de septiembre de 2001.

El 21 de enero de 1998 la licenciada Ada María Torres Pérez presentó ante esta Curia una queja contra el licenciado Pedro Juan Tejada Rivera. En síntesis, la quejosa alegó que el referido licenciado Tejada Rivera hizo constar falsamente, bajo su fe notarial, la comparecencia de unos otorgantes y de unos testigos instrumentales en una acta de subsanación y que, de igual manera, había falsificado una instancia solicitando la cancelación de una hipoteca.[1] En cumplimiento con la resolución emitida por este Tribunal el 24 de marzo de 2000, el Procurador

---

[1] Véase "Querella por violación a la Ley Notarial y a la Ética Profesional".

General de Puerto Rico presentó querella el 5 de abril de 2000, formulando contra el licenciado Tejada Rivera los cargos siguientes:

CARGO I

El Lic. Pedro J. Tejada Rivera violentó el Artículo 2 de la Ley Número 75 de 2 de julio de 1987[,] denominada Ley Notarial de Puerto Rico[,] la cual dispone lo siguiente:

El Notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública del Notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

CARGO II

El Lic. Pedro J. Tejada Rivera violentó el Canon 35 de Etica Profesional, 4 L.P.R.A. Ap. IX el cual, entre otras cosas[,] obliga a todo abogado a ajustarse a la sinceridad de los hechos al redactar affidávits u otros documento[s] y a abstenerse de utilizar medios inconsistentes con la verdad.

Vista la querella presentada por el Procurador General, así como la contestación del querellado negando los cargos imputados, el 26 de junio de 2000 este Tribunal designó al licenciado Agustín Mangual Hernández, Comisionado Especial. Dicho Comisionado señaló la celebración de una conferencia con antelación a la vista y le ordenó a las partes que presentaran un informe conjunto haciendo constar la prueba documental a ofrecerse en evidencia y las estipulaciones formuladas por las partes.[2]

La vista evidenciaria se celebró el 27 de noviembre de 2000. El Comisionado Especial, cumpliendo con nuestra encomienda, rindió un informe el 9 de febrero de 2001, en el cual recogió las estipulaciones de las partes y formuló las determinaciones de hechos correspondientes. Dicho funcionario encontró probado que el querellado autorizó el 3 de julio de 1991 una Instancia sobre Cancelación de Hipoteca,[3] la Escritura Pública Número Once (11) sobre Segregación,[4] y las Escrituras Públicas Número Doce (12), Trece (13) y Catorce (14) sobre Donación.[5] La quejosa era la donataria del negocio jurídico contenido en la Escritura Pública Número Catorce (14). Las referidas escrituras públicas fueron presentadas el 8 de octubre de 1991 ante el Registro de la Propiedad, Sección Segunda de Ponce. El Registrador de la Propiedad notificó al querellado, el 11 de julio de 1994, que las Escrituras Públicas Números Once (11), Doce (12), Trece (13) y Catorce (14) adolecían

---

[2] La conferencia con antelación a la vista se celebró el 31 de octubre de 2000 y en la misma se estipularon como evidencia los veinte (20) documentos que acompañaron el Informe del Procurador General.

[3] Apéndice I del Informe del Procurador General, págs. 1-3.

[4] Apéndice II, Íd., págs. 4-10.

[5] Apéndice III, IV y V, Íd., págs. 11-24.

de faltas que impedían su inscripción.[6] Dichas notificaciones no fueron recibidas por el querellado, porque éste había mudado su oficina. El Registrador de la Propiedad procedió a extender nota de caducidad en los asientos de presentación de dichas escrituras el 9 de septiembre de 1994. El 6 de marzo de 1996, el querellado presentó ante el Registro de la Propiedad, por segunda ocasión, una versión diferente de la Instancia sobre Cancelación de Hipoteca.[7] Dicho documento fue objeto de notificación de defecto por el Registrador de la Propiedad el 27 de marzo de 1996.[8] El querellado, el 22 de abril del mismo año, procedió a retirar del Registro de la Propiedad las Escrituras Públicas Número Once (11), Doce (12), Trece (13) y Catorce (14) anteriormente aludidas, conjuntamente con la Instancia sobre Cancelación de Hipoteca. El 20 de marzo de 1997, el querellado presentó nuevamente ante el Registro de la Propiedad las Escrituras Públicas Número Once (11), Doce (12), Trece (13) y Catorce (14) y el Acta de Subsanación Número Cuatro (4), logrando la inscripción de las escrituras públicas antes mencionadas. El Acta de Subsanación Número Cuatro (4) presentada en el Registro de la Propiedad no es la misma que se encuentra en el protocolo del notario querellado. La firma y las huellas dactilares en la segunda Instancia sobre Cancelación de Hipoteca no corresponden a las firmas y huellas dactilares de los otorgantes. De la misma manera, las iniciales y las huellas dactilares que aparecen en el Acta de Subsanación Número Cuatro (4) no son de los otorgantes. Dicha determinación fue estipulada por las partes ante nos y concuerda con los hallazgos del examinador forense de documentos dudosos y del técnico de huellas dactilares nombrados por el Procurador General.[9] De las declaraciones juradas estipuladas por las partes y del Informe del Procurador General, surge que los alegados otorgantes del Acta de Subsanación Número Cuatro (4) no comparecieron el 8 de marzo de 1997 a su otorgamiento, ni otorgaron escritura, acta o documento público alguno que fuera notarizado o suscrito por el querellado.[10] No obstante, surge del índice notarial del querellado, correspondiente al mes de marzo de 1997, que las aludidas actas fueron otorgadas ante sí por dichas personas.[11] El 26 de enero de 1998, el querellado presentó un Índice Notarial Enmendado en la Oficina de Inspección de Notarías, a los únicos fines de corregir que el Acta de Subsanación Número Cuatro (4) había sido otorgada por él mismo.[12] Todos los negocios y transacciones en que participó el querellado, por encomienda de la licenciada

---

[6] Apéndice VI, VII y VIII, Íd., págs. 25-27. Cabe señalar, que aun cuando el Comisionado Especial determinó que la Escritura Pública Número Once (11) fue notificada por el Registrador de la Propiedad, no surge del expediente que dicho documento haya sido efectivamente notificado.

[7] Véase Informe del Procurador General.

[8] Apéndice IX del Informe del Procurador General, pág. 28.

[9] Apéndice IXX y XX, Íd., págs. 53-60.

[10] Apéndice XI, XII y XIII, Íd., págs. 37-42.

[11] Apéndice XV, Íd., pág. 43.

Ada María Torres Pérez, tuvieron finalmente acceso al Registro de la Propiedad. Los protocolos del querellado correspondientes a los años 1991 y 1997 fueron aprobados por la Oficina de Inspección de Notarías.

## II

El artículo 2 de la Ley Notarial de Puerto Rico recoge el principio de la **fe pública notarial**. Sobre este particular, el artículo 2 de dicha ley dispone lo siguiente:[13]

> El notario es el profesional del Derecho que ejerce una **función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen**, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. **La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe** y también respecto a la forma, lugar, día y hora del otorgamiento. (Énfasis nuestro.)

La fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial.[14] El Estado le confiere a un documento autorizado por un notario, bajo su firma, signo, sello y rúbrica, una **presunción de credibilidad y certeza** de que lo afirmado en el mismo es cierto, correcto y concuerda con la realidad. El notario es el **custodio de la fe pública** y por la importancia de este deber, inherente a su profesión, reiteramos, una vez más, nuestro pronunciamiento relativo a que la sanción impuesta por una violación a dicha responsabilidad debe ser severa por la gravedad de la falta envuelta.[15] No debemos olvidar que una certificación

---

[12] Apéndice XVI, Íd., pág. 44.

[13] 4 L.P.R.A. sec. 2002.

[14] In re Ortiz Gutiérrez, res. el 18 de enero de 2001, 2001 T.S.P.R. 22, 153 D.P.R. ___ (2001), 2001 J.T.S. 23; In re González Maldonado, res. el 20 de diciembre de 2000, 2000 T.S.P.R. 192, 152 D.P.R. ___ (2000), 2000 J.T.S. 203; In re Díaz Ortiz, res. el 29 febrero de 2000, 2000 T.S.P.R. 53, 150 D.P.R. ___ (2000), 2000 J.T.S. 66; In re Jiménez Brackel, res. el 11 de mayo de 1999, 99 T.S.P.R. 73, 148 D.P.R. ___ (1999), 99 J.T.S. 79; In re Vera Vélez, res. el 5 de abril de 1999, 99 T.S.P.R. 46, 148 D.P.R. ___ (1999), 99 J.T.S. 51; In re Iglesias Pérez, res. el 30 de junio de 1998, 98 T.S.P.R. 101, 146 D.P.R. ___ (1998), 98 J.T.S. 108; In re Vargas Hernández, 135 D.P.R. 603 (1994); In re Medina Lugo, 136 D.P.R. 120 (1994); In re González González, 119 D.P.R. 496; In re Meléndez Pérez, 104 D.P.R. 770 (1976).

[15] In re Iglesias Pérez, supra; In re Jiménez Brackel, supra; In re Vargas Hernández, supra; In re Meléndez Pérez, supra.

falsa en un instrumento público autorizado por un notario socava la confianza en la fe pública notarial y en la profesión en general.[16]

No hay duda de que el licenciado Pedro Juan Tejada Rivera violó la fe pública notarial al suscribir bajo su firma, signo, sello y rúbrica que los otorgantes del Acta de Subsanación Número Cuatro (4) y de la Instancia sobre Cancelación de Hipoteca comparecieron al otorgamiento del mismo, firmaron e imprimieron sus huellas dactilares cuando no era cierto.  De igual manera, el licenciado Tejada Rivera violó la fe pública notarial al autorizar dos versiones diferentes del Acta de Subsanación Número Cuatro (4) y de la Instancia de Cancelación de Hipoteca.

El Canon 35 del Código de Ética Profesional recoge, de la misma manera, la **obligación que tiene todo notario de ejercer su función con honradez y sinceridad, exaltando los valores de la profesión.**  Dicho canon dispone lo siguiente:[17]

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> **El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas.** El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable. (Énfasis nuestro.)

El referido canon impone a todo abogado unas **normas mínimas** de conducta, **indispensables** para preservar el honor y la dignidad de la profesión.  Estas normas mínimas deben ser observadas no sólo en la tramitación de los pleitos, sino **en toda faceta desempeñada por los abogados.**[18]  Cualquier hecho aseverado en un instrumento público por un notario que no concuerde con la verdad constituye una violación al Canon 35 del Código de Ética Profesional, supra, independientemente de si hubo intención de faltar a la verdad.[19]

---

[16] In re Vera Vélez, supra.

[17] 4 L.P.R.A. Ap. XI, C. 35.

[18] In re Belk, Serapión, res. el 28 de junio de 1999, 99 T.S.P.R. 121, 148 D.P.R. ___ (1999), 99 J.T.S. 126 ; In re Martínez, Odell II, res. el 12 de abril de 1999, 99 T.S.P.R. 53, 148 D.P.R. ___ (1999), 99 J.T.S. 59.

[19] In re Astacio Caraballo, res. el 8 de diciembre de 2000, 2000 T.S.P.R. 11, 149 D.P.R. ___ (2000), 2000 J.T.S. 16; In re Martínez, Odell II, supra.

Concluimos que las actuaciones del licenciado Pedro Juan Tejada Rivera violentaron los deberes de sinceridad y dignidad consignados en el Canon 35 del Código de Ética Profesional, supra. Dichas actuaciones atentan y minan la confianza del público en el notariado.

Finalmente, hemos establecido que al determinar la sanción disciplinaria aplicable al abogado querellado, podemos tomar en cuenta factores como la reputación del abogado en la comunidad, el previo historial de éste, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de conducta aislada, el ánimo de lucro de su actuación, resarcimiento al cliente y cualquier otro atenuante o agravante que medie en los hechos particulares al caso.[20]

En el presente caso, tomamos en consideración como atenuantes a favor del licenciado Tejada Rivera, los siguientes: (a) es su primera falta en el descargo de su función profesional; y (b) no hubo intención de lucro. No obstante tales circunstancias atenuantes, la violación del querellado a la obligación a que está sujeto por la norma ética antes aludida, no es razón para eximirlo completamente de una sanción en este caso.[21]

En virtud de lo anterior, procede que le impongamos al licenciado Tejada Rivera una sanción disciplinaria consistente en la suspensión indefinida de la notaría y la suspensión por espacio de seis (6) meses del ejercicio de la abogacía.

Se dictará sentencia de conformidad.

---

[20] In re Díaz Ortiz, supra; In re Vélez Barlucea, res. el 26 de octubre de 2000, 2000 T.S.P.R. 158, 152 D.P.R. ___ (2000), 2000 J.T.S. 170; In re Padilla Rodríguez, res. el 18 de mayo de 1998, 98 T.S.P.R. 56, 145 D.P.R. ___ (1998), 98 J.T.S. 57; In re Ortiz Velásquez, res. el 15 de abril de 1998, 98 T.S.P.R. 42, 145 D.P.R. ___ (1998), 98 J.T.S. 44; In re Varcárcel Mulero I, 142 D.P.R. 41 (1996).

[21] In re Rosado Cruz, 142 D.P.R. 956 (1997).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

|                          |           | Conducta    |
| Pedro J. Tejada Rivera   | CP-2000-3 | Profesional |

SENTENCIA

San Juan, Puerto Rico, a 24 de septiembre de 2001.

Por los fundamentos expuestos en la Opinión <u>Per Curiam</u> que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia decretando la suspensión inmediata e indefinida de Pedro J. Tejada Rivera del ejercicio de la notaría, y de la abogacía por espacio de seis (6) meses, contados a partir de la notificación de esta Opinión <u>Per Curiam</u> y hasta que otra cosa disponga este Tribunal.

Le imponemos a Tejada Rivera el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro de un término de treinta (30) días, a partir de su notificación, el cumplimiento de estos deberes, notificando también al Procurador General.

La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra notarial de Pedro J. Tejada Rivera, incluyendo su sello notarial, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Presidente señor Andréu García y los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo