EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re: <br><br> Felipe Bravo García | 2025 TSPR 13 <br><br> 215 DPR ___ |

Número del Caso:  TS-8483


Fecha:  19 de febrero de 2025


Oficina de Inspección de Notarías:

     Lcdo. Manuel E. Ávila De Jesús
     Director


Representante legal del Sr. Felipe Bravo García:

     Por derecho propio


Materia:  Conduta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía y de la notaría por incumplimiento con las órdenes del Tribunal Supremo y por infringir los cánones 9, 18 y 35 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Felipe Bravo García                   TS-8,483

*PER CURIAM*

En San Juan, Puerto Rico, a 19 de febrero de 2025.

Una vez más, nos vemos obligados a ejercer nuestra facultad disciplinaria sobre un integrante de la profesión legal que ha desplegado displicencia hacia las órdenes de este Tribunal. En esta ocasión, intervenimos con el Lcdo. Felipe Bravo García por infringir los Cánones 9, 18 y 35 del Código de Ética Profesional, 4 LPRA Ap. IX. En virtud de los fundamentos que expondremos más adelante, decretamos la suspensión inmediata e indefinida del letrado de la práctica de la abogacía y de la notaría.

Veamos los hechos que motivan nuestra determinación.

**I.**

El 14 de enero de 1987 se admitió al licenciado Bravo García al ejercicio de la abogacía. Poco después, el 22 de enero de 1987 se le admitió al ejercicio de la notaría. Desde entonces, ha ejercido la profesión de la abogacía durante treinta y cinco (35) años y mantuvo su obra notarial sin señalamientos hasta el 2011, según surge de la última inspección que realizó la Oficina de Inspección de Notarías (ODIN).

Conforme el Título VIII de la *Ley Notarial de Puerto Rico,* Ley Núm. 75 del 2 de julio de 1987, 4 LPRA secs. 2101-2106 (Ley Notarial), el 6 de diciembre de 2022 la Lcda. Nilda Emmanuelli Muñiz, Directora Auxiliar de la ODIN, envió una citación formal al licenciado Bravo García mediante la cual le informó que el 30 de enero de 2023 personal de la ODIN acudiría a su oficina para iniciar la inspección de la obra notarial correspondiente al periodo comprendido entre los años 2010 al 2022. En la citación, se le informó que la Lcda. Nydia I. Rodríguez Acosta sería la Inspectora de Protocolos y Notarías (Inspectora) encargada del proceso.

Según notificado el 30 de enero de 2023, la Inspectora comenzó el proceso de inspección en el Archivo General de San Juan (Archivo General), puesto que para esta fecha se había trasladado la obra notarial del 2010 al 2016 a este. Ese mismo día, la Inspectora se percató de que la obra notarial correspondiente a los años 2017 al 2022 no estaba encuadernada, por lo que el 17 de febrero de 2023 la ODIN solicitó al licenciado Bravo García que trasladara los instrumentos públicos sueltos correspondientes a los años 2017 a 2022 al

Archivo General. Durante el trámite de la inspección, la Inspectora también encontró que faltaban seis mil setecientos noventa y nueve (6,799) asientos de testimonios.[1]

El 21 de febrero de 2023 el licenciado Bravo García compareció ante este Tribunal mediante una *Moción informativa* en la que notificó que su exsecretaria se apropió ilegalmente de una mayoría de los testimonios desaparecidos.[2] En específico, indicó que, en enero de 2020, su exsecretaria no acudió a la oficina y mantuvo bajo su poder los testimonios desaparecidos; los sellos de asistencia legal, de rentas internas y de impuesto notarial; su sello notarial, y mil quinientos dólares ($1,500) en efectivo.

El licenciado Bravo García informó que, a consecuencia de lo ocurrido, incoó una querella ante la Policía de Puerto Rico en el 2021. Vale mencionar que el licenciado Bravo García nada dijo sobre los demás asientos de testimonios que la Inspectora señaló que estaban desaparecidos. Por lo anterior, el 10 de marzo de 2023 emitimos una *Resolución* mediante la cual referimos el asunto a la ODIN para la acción correspondiente.

Luego de poco más de un mes, el 17 de marzo de 2023 la ODIN culminó el proceso de la inspección de la obra notarial. A pesar de que aprobó los protocolos de los años 2010, 2011, 2013 y 2014, persistieron deficiencias en el protocolo del 2012 y en los del 2015 hasta febrero de 2023. Ante esto, el licenciado

---

[1] En específico, faltaban los asientos del once mil trescientos sesenta y ocho (11,368) al dieciocho mil ciento sesenta y siete (18,167).

[2] En particular, señaló que se apropió de los asientos trece mil trescientos setenta y siete (13,377) al dieciocho mil setecientos sesenta y siete (18,767).

Bravo García y la Inspectora coordinaron varias reuniones para subsanar las deficiencias. Sin embargo, estas no fueron suficientes para subsanar su obra, puesto que subsistieron deficiencias; a saber: setenta y dos (72) instrumentos públicos con defectos y una deuda arancelaria de veinticuatro mil ochocientos setenta y ocho dólares ($24,878). Por ello, la ODIN le solicitó al licenciado Bravo García que entregara la totalidad de su obra notarial.

El 18 de agosto de 2023 el licenciado Bravo García entregó la obra notarial examinada y sin subsanar, la cual constaba del protocolo del 2012 y de los del 2015 al 2023; un (1) volumen del Libro de Registro de Testimonios, y dos (2) sellos notariales que tenía bajo su custodia.

El 3 de octubre de 2023 la Inspectora remitió un *Informe de Deficiencias de la obra notarial del Lcdo. Felipe Bravo García, [RUA [8483]], a tenor [con] la Regla 77(m) del Reglamento Notarial*. En este, afirmó que, a partir de julio de 2023, el licenciado Bravo García entregó diez mil quinientos cuarenta dólares ($10,540) en aranceles de la Sociedad para Asistencia Legal (SAL), los cuales se utilizaron para cancelar la deuda del Registro de Testimonios. No obstante, la Inspectora expresó que subsistía una deuda de catorce mil trescientos treinta y ocho dólares ($14,338) en aranceles de los protocolos.

Celebraron la inspección final el 29 de septiembre de 2023, pero aún luego de esa reunión, existían deficiencias sustantivas que impedían la aprobación de la obra en su totalidad; a saber: quedaban setenta y dos (72) instrumentos

públicos por subsanar; tenía mil doscientos ochenta y cinco (1,285) señalamientos de deficiencias en el Registro de Testimonios, sin contar los testimonios desaparecidos; una deuda de veintidós mil novecientos noventa y dos dólares ($22,992) en aranceles para el Registro de Testimonios, y un estimado de quince mil dólares ($15,000) en deficiencias arancelarias de su obra notarial.

El 9 de octubre de 2023 el Director de la ODIN remitió una comunicación formal al licenciado Bravo García mediante la cual le informó la situación referente a las deficiencias de su obra notarial. Le concedió un término final e improrrogable de veinte (20) días para que acreditara haber atendido y finiquitado los asuntos señalados.[3]

El 22 de enero de 2024 la ODIN compareció mediante un *Informe especial sobre incumplimiento en la corrección de deficiencias notificadas y en solicitud de remedios* en el que indicó que el licenciado Bravo García entregó los testimonios dieciocho mil ciento sesenta y ocho (18,168) hasta el diecinueve mil veintisiete (19,027). Es decir, que el licenciado entregó a la ODIN algunos de los testimonios que, según alegó, su exsecretaria había apropiado ilegalmente. Además, indicó que el licenciado Bravo García incumplió con el término provisto y que aún no había subsanado su obra protocolar, por lo cual solicitó que concediéramos un término al licenciado para que

---

[3] El 11 de enero de 2024 su representante legal informó que el licenciado Bravo García y ella habían culminado su relación profesional. Desde esta fecha, el licenciado Bravo García ha comparecido sin representación legal.

expusiera las razones por las cuales no debía decretarse su suspensión del ejercicio de la notaría.

A esos efectos, el 8 de febrero de 2024 emitimos una *Resolución* mediante la cual le concedimos al licenciado Bravo García un término de diez (10) días para que mostrara causa por la cual no debíamos separarlo de forma inmediata e indefinida del ejercicio de la notaría por incumplir con los requerimientos de la ODIN.

El 20 de febrero de 2024 el licenciado Bravo García compareció mediante una moción intitulada *Cumplimiento de orden* en la que sostuvo que no lo deberíamos suspender debido a que sufre de serias condiciones de salud. Indicó, además, que, debido a ello y a la dilación de la ODIN en inspeccionar su obra notarial, su obra contenía numerosas deficiencias. Asimismo, mencionó que, de ser necesario, podía proveer más razones por las cuales había faltas en su obra notarial.

El día siguiente, 21 de febrero de 2024, la ODIN presentó una *Moción notificando incumplimiento de orden y en solicitud de remedios.* Indicó que el licenciado Bravo García incumplió nuevamente con nuestras órdenes, esta vez con el término concedido el 8 de febrero de 2024. En consecuencia, solicitó que suspendiéramos de forma inmediata e indefinida al licenciado Bravo García del ejercicio de la notaría. Además, peticionó que concediéramos a este un término final e improrrogable de cuarenta y cinco (45) días para subsanar su obra notarial.

El 22 de febrero de 2024 el licenciado Bravo García

compareció mediante *Moción en cumplimiento de orden* en la que arguyó que había cumplido con todas las órdenes de este Tribunal. Dijo esto, a pesar de que aún subsistían deudas arancelarias y deficiencias en su obra notarial, y que incumplió con nuestra orden del 8 de febrero de 2024 mediante la cual le ordenamos mostrar causa por la cual no deberíamos suspenderlo del ejercicio de la abogacía y de la notaría.

Tras evaluar las mociones, el 6 de marzo de 2024 emitimos una *Resolución* mediante la cual le concedimos al licenciado Bravo García un término adicional de cuarenta y cinco (45) días para que subsanara su obra notarial. Asimismo, le apercibimos de que su incumplimiento con el término podría acarrear su separación del ejercicio de la abogacía y de la notaría, y el referido del caso al Tribunal de Primera Instancia para encaminar el proceso de desacato civil.

Poco antes de que se venciera el término para que subsanara su obra, el 15 de abril de 2024 el licenciado Bravo García compareció ante nos y solicitó un adelanto de una partida aún no adjudicada de la herencia de sus padres. Esto, en un intento de sufragar los honorarios que todavía le debía a su representación legal.

Por su parte, el 25 de abril de 2024 compareció la ODIN mediante una *Moción reiterando incumplimiento de orden y en solicitud de remedios* en la que explicó que aún existían graves deficiencias en la obra notarial del licenciado Bravo García, tanto de naturaleza sustantiva como arancelaria. Sostuvo que el licenciado Bravo García no reconocía la gravedad de los

asuntos que debían ser subsanados y que no estaba cooperando con la subsanación de la obra. Ante ello, solicitó la suspensión del licenciado Bravo García del ejercicio de la notaría de manera inmediata e indefinida, la imposición de las sanciones disciplinarias que consideráramos procedentes y el referido del asunto al Tribunal de Primera Instancia para la celebración del proceso de desacato civil.

El 3 de mayo de 2024 el licenciado Bravo García compareció mediante *Moción en oposición a presentación de escrito de la ilustre Oficina de Inspección de Notaría (ODIN)* y solicitó que se le permitiera continuar con la subsanación de las deficiencias señaladas. Arguyó que entregó su obra notarial voluntariamente antes de que le fuese solicitado. Además, sostuvo que la información necesaria para la subsanación estaba dentro de un maletín que ya no tenía en su posesión y del cual desconocía el paradero. El licenciado aludió a que un tercero pudo haber desaparecido el referido maletín.

El 14 de mayo de 2024 emitimos una *Resolución* mediante la cual concedimos al licenciado Bravo García un término de quince (15) días para que mostrara causa por la cual no debíamos separarlo de manera inmediata e indefinida del ejercicio de la abogacía y de la notaría por su incumplimiento reiterado con las órdenes de este Tribunal.

El 29 de mayo de 2024 el licenciado Bravo García compareció nuevamente. En esta ocasión, indicó que estaba bajo tratamiento para atender varias condiciones de salud. Sostuvo que las referidas condiciones habían dificultado su situación

económica, lo cual afectó el proceso de subsanación. A su solicitud, adjuntó evidencia de medicamentos que le recetó su médico primario. Por esa razón, solicitó, nuevamente, que se le permitiera continuar con la subsanación de la obra.

Ese mismo día, el licenciado Bravo García presentó un escrito intitulado *Moción en oposición a presentación de escrito de la ilustre Oficina de Inspección de Notaría (ODIN)*. En esencia, reiteró que: (1) entregó su obra notarial voluntariamente; (2) el maletín que contenía la información recopilada para la subsanación desapareció, y (3) sufría varias condiciones médicas que habían afectado el proceso de subsanación. Explicó que obtuvo un préstamo para sufragar una porción de la deuda arancelaria, pero que, a pesar de esto, no contaba con el dinero necesario para sufragar la deuda arancelaria pendiente. Ante ello, solicitó que se le eximiera de los pagos de los aranceles sin cancelar.

A raíz de esto, el 28 de junio de 2024 emitimos otra *Resolución* mediante la cual concedimos una segunda prórroga, esta vez de sesenta (60) días, al licenciado Bravo García para que subsanara su obra notarial. Una vez más, le apercibimos de que su incumplimiento podía acarrear la separación del ejercicio de la abogacía y de la notaría, y el referido del asunto al Tribunal de Primera Instancia para encaminar el proceso de desacato civil.

El 22 de julio de 2024 el licenciado Bravo García compareció y solicitó que le permitiéramos examinar la obra que se encontraba depositada en el Archivo General. Solicitó esto,

pues necesitaba acceso a ciertas escrituras públicas para continuar el proceso de subsanación.

En respuesta, el 29 de julio de 2024 la ODIN compareció mediante *Reacción al escrito presentado* y adujo que la solicitud del licenciado Bravo García era inoficiosa ya que él conocía que las visitas al Archivo General se coordinaban a través de la Inspectora. La ODIN informó que la Inspectora se comunicó con el licenciado Bravo García y coordinó para que este examinara los documentos necesarios para completar el proceso de subsanación que, hasta el momento, se había prolongado por dos (2) años. Añadió que, a pesar de ello, continuaban extraviados seis mil setecientos noventa y nueve (6,799) testimonios, permanecían sin subsanar sesenta y un (61) instrumentos y el licenciado Bravo García adeudaba catorce mil trescientos treinta y ocho dólares ($14,338) en sellos. La ODIN expresó reservas en conceder prórrogas adicionales y solicitó que notificáramos al licenciado que, de no completar todos los asuntos que impedían la aprobación de la obra notarial, este corría el riesgo de ser suspendido del ejercicio de la abogacía y de la notaría.

El 23 de agosto de 2024 el licenciado Bravo García compareció y notificó que no había completado el proceso de subsanación de su obra notarial ya que contrajo COVID-19.[4] Además, indicó que, inadvertidamente, durante un proceso de mudanza colocó el empaque que incluía sus subsanaciones en

---

[4] Aseveró que estuvo catorce (14) días sin poder trabajar en la subsanación debido a su diagnóstico.

manuscrito junto con unas bolsas de desperdicios y el Municipio de San Juan dispuso de ellas.

El 4 de septiembre de 2024 el licenciado Bravo García compareció nuevamente mediante una *Réplica a documento suscrito por el Honorable Manuel E. Ávila de Jesús.* Adujo que había corregido el cincuenta por ciento (50%) o más de su obra notarial y que la Inspectora era testigo de los esfuerzos que había realizado para completar la subsanación. Sostuvo que emitió dos (2) cheques certificados por más de catorce mil dólares ($14,000), por lo que satisfizo la deuda arancelaria pendiente, y reafirmó que los seis mil ochocientos (6,800) asientos que faltaban del Libro de Registro de Testimonios fueron apropiados ilegalmente por su exsecretaria.

Por otro lado, indicó que nunca se le informó sobre una reunión inesperada que tuvo en un lugar público con el Director de la ODIN. Solicitó otra prórroga para culminar la reconstrucción de su obra.

El 5 de septiembre de 2024 compareció la ODIN mediante una *Moción notificando estado de subsanación de obra notarial incautada, reacción a escrito intitulado, réplica al documento suscrito por el honorable Manuel E. Ávila de Jesús y en solicitud de remedios*. Informó que el término concedido por este Tribunal el 28 de junio de 2024 venció sin que el señor Bravo García subsanara su obra. Aún más, informó que, durante la última prórroga concedida, el licenciado Bravo García no atendió ningún asunto sustantivo. No obstante, acreditó que el licenciado Bravo García entregó varios aranceles correspondientes a sus Tomos de

Protocolo y que entregó un cheque de cinco mil dólares ($5,000) para aportar a su deuda arancelaria del Registro de Testimonios.

En su comparecencia, la ODIN explicó el encuentro entre el Director de la ODIN y el licenciado Bravo García descrito por este último en su *Réplica a documento suscrito por el Honorable Manuel E. Ávila de Jesús*. Indicó que el 2 de agosto de 2024 el licenciado Bravo García acudió al Archivo Notarial e informó que recuperó una caja con documentos relacionados a los afidávits que debía subsanar. Explicó que el licenciado Bravo García afirmó que parte de los aranceles que debían ser adheridos se encontraban en la referida caja, la cual, a su vez, estaba en el interior de su vehículo de motor, el cual se encontraba en un taller de mecánica.

Ante esto, el Director de la ODIN explicó que le indicó al licenciado Bravo García que era un riesgo dejar la caja sin custodia y que podían acompañarlo al taller a recuperarla. Adujo que el licenciado Bravo García indicó que no podía recuperar la caja esa tarde, ya que tenía que atender otros asuntos. En vista de esto, el Director de la ODIN sostuvo que le informó al licenciado Bravo García que debía comunicarse con la Inspectora para coordinar la entrega de la caja. El 6 de agosto de 2024 el licenciado Bravo García admitió que fue deshonesto y que en la caja no había aranceles.

En este contexto, el Director de la ODIN solicitó que, ante el reiterado incumplimiento del licenciado Bravo García, decretáramos su suspensión inmediata e indefinida del ejercicio de la notaría, que evaluáramos la posibilidad de imponer

sanciones disciplinarias adicionales y que refiriéramos el asunto al Tribunal de Primera Instancia para la celebración de un proceso de desacato civil.

El 10 de septiembre de 2024 el licenciado Bravo García compareció mediante una *Moción sobre corrección y explicativa sobre subsanación de obra notarial*. Reiteró que entregó su obra notarial voluntariamente y que padece de varias enfermedades, tales como diabetes, enfisema, alta presión y arteriosclerosis, pero no presentó evidencia a los efectos de acreditar las referidas condiciones. Finalmente, solicitó que le permitiéramos subsanar su obra notarial y retener su función notarial.

## II.

### A. Canon 9 de Ética Profesional

El Código de Ética Profesional incluye las normas mínimas que fijan de manera concreta la conducta que la sociedad le exige a los miembros de la profesión legal. Preámbulo de los Cánones de Ética Profesional, 4 LPRA Ap. IX. El incumplimiento con las normas podría acarrear sanciones disciplinarias. In re Carrasquillo Bermúdez, 203 DPR 847, 864 (2020); In re Prado Galarza, 195 DPR 894, 910 (2016); In re Cuyar Fernández, 163 DPR 113, 119 (2004).

El Canon 9 del Código de Ética Profesional regula la conducta de los abogados y las abogadas ante los tribunales. 4 LPRA Ap. IX. La conducta desplegada por los abogados y las abogadas deberá caracterizarse por el mayor respeto. In re Cardona Estelritz, 212 DPR 649, 663 (2023); In re Meléndez

Mulero, 208 DPR 541, 549-550 (2022). El Canon 9 no solo cubre el respeto directamente hacia los jueces y las juezas, sino que también requiere que se preserve el buen orden en la administración de la justicia en los tribunales. 4 LPRA Ap. IX.

Para poder cumplir con los parámetros de este Canon, los abogados y las abogadas deben seguir las órdenes de este Tribunal de manera oportuna y diligente. In re Montañez Melecio, 197 DPR 275, 284 (2017); In re Irizarry Irizarry, 190 DPR 368, 374 (2014). Ignorar las órdenes del Tribunal demuestra una actitud de menosprecio e indiferencia y puede causar demoras irrazonables en el trámite de los casos. In re Cardona Rodríguez, 206 DPR 863, 868 (2021); In re López Santiago, 199 DR 797, 808 (2018); In re Massanet Rodríguez, 188 DPR 116, 124 (2013). De no cumplir con las órdenes de este Tribunal prontamente, se presume que el abogado o la abogada asume una actitud de menosprecio e indiferencia que denota falta de respeto hacia nuestra autoridad. In re Dávila Toro, 193 DPR 159, 163 (2015); In re Villalba Ojada, 193 DPR 966, 974 (2015). Además, "[u]n abogado [o una abogada] que incumple con nuestras órdenes y no justifica su proceder está sujeto a ser sancionado con su suspensión indefinida del ejercicio de la abogacía". In re Montañez Melecio, supra, pág. 284. Por tanto, incurrir en este tipo de conducta constituye una violación al Canon 9.

El cumplimiento tardío con las órdenes de este Tribunal también se considera una violación al Canon 9, ya que "[u]n patrón de desidia es incompatible con la conducta que demanda el Canon 9 del Código de Ética". Íd. La naturaleza de esta

profesión incluye atención y obediencia a las órdenes de este Tribunal, particularmente cuando tiene que ver con la conducta profesional. In re Pérez Román, 191 DPR 186, 188 (2014). Es por ello que, ante la inhabilidad de un abogado o de una abogada de atender con diligencia los requerimientos, procede ejercer nuestra facultad disciplinaria. Íd.; In re Colón Olivo, 187 DPR 659, 663 (2013); In re Marrero García, 187 DPR 578, 581-582 (2012); In re Betancourt Medina, 183 DPR 821, 825-826 (2011).

A tenor de lo esbozado anteriormente, una de las consecuencias que podría conllevar el incumplimiento con las órdenes del Tribunal es la suspensión indefinida del ejercicio de la abogacía. In re Stacholy Ramos, 207 DPR 521, 535 (2021); In re López Santiago, 199 DPR 797, 820 (2018); In re Soto Peña, 2024 TSPR 23, 213 DPR 663, 681 (2024).

### B. Canon 18 de Ética Profesional

Por su parte, el Canon 18 establece el deber que tienen los profesionales del derecho de ejercer sus funciones de manera competente, cuidadosa y diligente. 4 LPRA, Ap. IX. In re Román Jiménez, 213 DPR 467, 476 (2024). Este Canon le impone a los abogados y a las abogadas el deber de ejercer la profesión con celo, cuidado y prudencia. In re Villalba Ojeda, 203 DPR 572, 579 (2019); In re Nazario Díaz [II], 198 DPR 793, 803 (2017). Es por esto que, al ejercer la profesión, es necesario que los abogados y las abogadas empleen toda su capacidad, lealtad, responsabilidad, efectividad y la más completa honradez. In re Villalba Ojeda, supra, pág. 579; In re Cuevas Borrero, 185 DPR 189, 199 (2012). De no hacerlo, utilizamos este Canon para

condenar la desidia y la displicencia en los asuntos que le son encomendados a los abogados y las abogadas. In re Rafucci Caro, 213 DPR 587, 602 (2024).

Además, hemos dicho que "[i]nfringe este canon el notario que toma livianamente el celo de la custodia de la fe pública notarial al no ejercer la profesión con el cuidado y la prudencia que esta requiere". In re Vázquez Margenat, 204 DPR 968, 979 (2020). Este Canon requiere que los abogados notarios y las abogadas notarias rindan una labor idónea. In re Sánchez Reyes, 204 DPR 548, 567 (2020). En particular, deben demostrar que poseen los conocimientos jurídicos necesarios durante la ejecución de sus funciones. In re Villalona Viera, 206 DPR 360, 374 (2021). Violar las disposiciones de la Ley Notarial y de su Reglamento, contraviene las disposiciones de este Canon, pues no se ejerce la profesión con el cuidado y la prudencia que esta requiere. Íd. Como hemos dicho en reiteradas ocasiones, el notariado debe ser sumamente cauteloso en el ejercicio de su práctica y debe tener presente las consecuencias que su negligencia puede tener sobre los negocios jurídicos. In re Pagani Padró, 198 DPR 812, 822 (2017); In re García Cabrera et al., 188 DPR 196, 210 (2013); In re Muñoz Fernós, 184 DPR 679, 685 (2012); In re Rodríguez Báez, 129 DPR 819, 823 (1992).

### C. Canon 35 de Ética Profesional

Según el Canon 35, la conducta de cualquier integrante de la profesión legal ante los tribunales debe ser sincera y honrada. 4 LPRA, Ap. IX. "No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir

al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho". Íd. Esto es así, pues el ejercicio de la abogacía se enfoca en buscar la verdad y somos los abogados y las abogadas quienes tenemos el deber de administrar la justicia y conducirnos con integridad ante los foros judiciales. In re Lugo Quiñones, 206 DPR 1, 12 (2021); In re Feliciano Rodríguez, 198 DPR 369, 385 (2017) (citando a In re Irizarry Vega, 176 DPR 241, 245-246 (2009)); In re Irizarry Rodríguez, 193 DPR 633 (2015).

"[S]e incumple con este Canon por el simple hecho de faltar a la verdad, independientemente de las razones que lo motiven". In re Lugo Quiñones, *supra*, pág. 12; In re Vázquez Pardo, 185 DPR 1031, 1043 (2012). "[P]ara actuar de conformidad con el mandato de este canon, es indispensable que los abogados y las abogadas se aseguren de no proveer información falsa o incompatible con la verdad y de no ocultar información cierta que debe ser revelada". In re Aponte Morales, *supra*, pág. 187. Además, es importante recordar que este deber de sinceridad y honradez se extiende a la conducta de los abogados y las abogadas como notarios. In re Tejada Rivera, 155 DPR 175 (2001). Hemos dicho que "no es defensa la ausencia de haber obrado de mala fe, deliberadamente o sin la intención de engañar como tampoco lo es que no se haya causado daño a un tercero". In re Román Jiménez, *supra*, pág. 477.

## III.

El proceso disciplinario contra el licenciado Bravo García comenzó con el señalamiento de seis (6) tomos sin encuadernar,

seis mil setecientos noventa y nueve (6,799) asientos de testimonio desaparecidos, diez (10) protocolos con deficiencias sustantivas y arancelarias, una deuda de veintidós mil novecientos noventa y dos dólares ($22,992) en aranceles para el Registro de Testimonios, una deuda de veinticuatro mil ochocientos setenta y ocho dólares ($24,878) en aranceles de sus Protocolos, y setenta y tres (73) señalamientos de error en sus Protocolos.

A la fecha de este escrito, el licenciado Bravo García adeuda trescientos sesenta y nueve dólares ($369) en aranceles de sus libros de Protocolos y siete mil cuatrocientos cincuenta y dos dólares ($7,452) en aranceles de su Libro de Testimonios. Además, en sus Protocolos referentes a los años 2012 y del 2015 al 2023 aún permanecen sesenta y un (61) señalamientos sin atender. A eso se le añaden mil doscientos ochenta y cinco (1,285) señalamientos de error en su Libro de Testimonios.

Es decir, aunque el licenciado Bravo García satisfizo una gran cantidad de su deuda arancelaria, este ha mostrado poco interés en subsanar las deficiencias sustantivas que le han señalado. Este Tribunal, al considerar las condiciones de salud que ha sufrido el licenciado en los últimos años, ha concedido dos (2) prórrogas sustanciales para que este cumpla con nuestras órdenes y hemos apercibido al licenciado varias veces de las consecuencias de su incumplimiento continuado. No obstante, el licenciado Bravo García continuamente ha fabricado excusas increíbles para justificar su incumplimiento con las órdenes de este Tribunal como de los requerimientos la ODIN. Veamos.

Lo primero que indicó el licenciado Bravo García cuando se le notificó de la inspección de su obra protocolar fue que su exsecretaria se apropió ilegalmente de casi siete mil (7,000) testimonios; de sellos de SAL, de rentas internas y de impuesto notarial, y de mil quinientos dólares ($1,500) en efectivo.

Asimismo, reiteró en numerosas ocasiones que entregó su obra notarial voluntariamente antes de que le fuera requerido. Esto fue un intento de que utilicemos esa información como atenuante a su situación. No obstante, del expediente surge claramente que a este se le solicitó la entrega de su obra notarial el 17 de marzo de 2023, y que no fue hasta el 18 de agosto de 2023 que él acreditó su entrega.

Posteriormente, sostuvo que la información necesaria para subsanar su obra notarial incautada estaba dentro de un maletín cuyo paradero se desconocía. Ante eso, la única explicación que ofreció fue que el maletín desapareció por culpa de un tercero.

Unos meses después, explicó que había hecho la subsanación de su obra notarial a mano, pero que, por inadvertencia, durante un proceso de mudanza colocó el empaque donde había guardado el trabajo que hizo junto con unas bolsas de desperdicios. En esta ocasión, esbozó que, debido a su descuido, el Municipio de San Juan dispuso de ellas.

Aún más, en un último intento de explicar por qué no había subsanado su obra, explicó que recuperó una caja con documentos relacionados a los afidávits que debía subsanar, pues esta caja incluía los aranceles necesarios para subsanar la obra. No obstante, el día que la ODIN lo citó para subsanar esta

deficiencia arancelaria, dejó la caja dentro de su vehículo de motor que se encontraba en un taller de mecánica. Ante el ofrecimiento del Director de la ODIN de acompañarlo a buscar la caja debido a la importancia de preservar su contenido, el licenciado Bravo García insistió en que no podía esa tarde porque su agenda estaba muy ocupada. Ello fue a pesar de que debió haber separado el día para acudir a la ODIN a subsanar su obra notarial incautada.

A raíz de lo anterior, es evidente que el licenciado Bravo García no tiene la intención de aceptar responsabilidad por la inhabilidad de subsanar su obra notarial defectuosa ni de, en efecto, subsanar las faltas señaladas. Recordemos que "[l]os jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería". Pueblo v. Luciano Arroyo, 83 DPR 573, 582 (1961).

A nuestro juicio, las excusas que ofreció el licenciado Bravo García carecen de credibilidad. Un examen de sus comparecencias y de las de la ODIN demuestran una falta de interés constante del licenciado en subsanar las faltas señaladas y de pagar los aranceles debidos. Además, demuestran un nivel de descuido que no es digno de la profesión legal. Señalamiento tras señalamiento, el licenciado mostró que no tenía intención de subsanar su obra notarial ni de aceptar la responsabilidad por el incumplimiento con los deberes que acarrea el ejercicio de la abogacía y la notaría.

Tanto es así que el licenciado responsabilizó a su exsecretaria por apropiarse ilegalmente de los testimonios

desaparecidos; a un tercero desconocido de robarse el maletín que contenía la información que necesitaba para subsanar su obra; al Municipio de San Juan por botar la obra que supuestamente había subsanado a mano, y a la ODIN por demorarse en inspeccionar su obra notarial y, en consecuencia, provocar la acumulación de faltas. El licenciado Bravo García en ningún momento ha aceptado su responsabilidad por su descuido.

Por otro lado, a pesar de que el licenciado Bravo García satisfizo una gran cantidad de su deuda arancelaria, este no la pagó diligentemente, pues, aunque conocía de ella desde febrero del 2023, no la empezó a pagar hasta luego de ofrecer varias excusas y de solicitar que le eximiéramos del pago de los aranceles debidos. Asimismo, aunque el licenciado acudió a la ODIN para encaminar la reconstrucción de su obra, en la última prórroga concedida no atendió ningún asunto sustantivo.

Es por esto que, aunque los señalamientos de error se hicieron desde febrero de 2023, al día que se publica esta Opinión *Per Curiam* los protocolos de los años 2012 y del 2015 al 2023 aún no han sido aprobados y su Libro de Testimonios adolece de numerosos señalamientos de faltas. El licenciado Bravo García no ha atendido las deficiencias de su obra notarial con la diligencia que se requiere. Por tanto, procede su suspensión inmediata e indefinida del ejercicio de la abogacía y de la notaría.

Finalmente, el licenciado Bravo García sostiene que ha cumplido con todas las órdenes de este Tribunal. Sin embargo, si bien es cierto que ha comparecido dentro de los términos

concedidos, no ha cumplido con nuestras órdenes. Por ejemplo, al solicitarle que mostrara causa por la cual no lo deberíamos suspender, adujo que el término que tardó la ODIN en inspeccionar su obra fue la razón por la cual se señalaron tantas deficiencias.

Los abogados notarios y las abogadas notarias tienen el deber de mantener sus obras notariales conforme a la Ley Notarial y a su Reglamento. No deben adoptar una actitud de dejadez e indiferencia y únicamente actuar conforme con la ley cuando los inspectores hacen sus señalamientos.

Los hechos anteriores demuestran que el licenciado Bravo García ha incumplido con numerosas órdenes de este Tribunal como con los requerimientos de la ODIN, que le han solicitado la subsanación de su obra notarial. A pesar de que ha satisfecho gran parte de su deuda arancelaria, en cada comparecencia ante nos ha demostrado su falta de compromiso con subsanar su obra notarial, pues expone excusa tras excusa para evitar tener que subsanar los diez (10) protocolos que permanecen sin aprobar.

El licenciado Bravo García: (1) violó el Canon 9 de Ética Profesional, *supra*, pues continuamente ha ignorado los requerimientos de la ODIN y las órdenes de este Tribunal para que subsane su obra protocolar y cumpla con el pago de su deuda arancelaria; (2) violó el Canon 18 de Ética Profesional, *supra*, al permitir que su obra notarial y su Libro de Registro de Testimonios adoleciera de una gran cantidad de señalamientos de faltas y al demorarse más de dos (2) años en completar la subsanación de su obra protocolar y satisfacer su deuda

arancelaria, y (3) violó el Canon 35 de Ética Profesional, *supra*, al presentar como excusa relatos inverosímiles tanto a la ODIN como a este Tribunal para justificar las deficiencias y el incumplimiento con sus deberes como abogado notario.

Lo anterior ha evidenciado su desinterés en subsanar su obra notarial y su dejadez crasa ante su responsabilidad como miembro de la profesión legal. Ante ello, procede ejercer nuestra facultad disciplinaria y separarlo inmediata e indefinidamente del ejercicio de la abogacía y de la notaría.

## IV.

Por los fundamentos expuestos, suspendemos de forma inmediata e indefinida al señor Bravo García del ejercicio de la abogacía y de la notaría. Se le impone el deber de notificar a sus clientes de su inhabilidad para continuar representándoles, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos en los que tenga algún asunto pendiente. Además, tiene la obligación de acreditar ante este Tribunal el cumplimiento de lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y *Sentencia*.

Notifíquese al señor Bravo García de esta Opinión *Per Curiam* y de la *Sentencia* por medio del correo electrónico registrado en el Registro Único de Abogados.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Felipe Bravo García

TS-8,483

SENTENCIA

En San Juan, Puerto Rico, a 19 de febrero de 2025.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, suspendemos de forma inmediata e indefinida al señor Bravo García del ejercicio de la abogacía y de la notaría. Se le impone el deber de notificar a sus clientes de su inhabilidad para continuar representándoles, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos en los que tenga algún asunto pendiente. Además, tiene la obligación de acreditar ante este Tribunal el cumplimiento de lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y *Sentencia*.

Notifíquese al señor Bravo García de esta Opinión *Per Curiam* y de la *Sentencia* por medio del correo electrónico registrado en el Registro Único de Abogados.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo