Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| CONSEJO DE TITULARES CONDOMINIO COSTA ESMERALDA<br><br>Apelada<br><br>v.<br><br>MANUEL DÁVILA ORTIZ, GLADYS ESTHER HAMILTON MORALES Y LA SOCIEDAD LEGAL DE GANANCIALES ENTRE AMBOS<br><br>Apelantes | KLAN202500260 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso núm.: FA2023CV00848<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 20 de mayo de 2025.

Comparece ante este tribunal apelativo, el Sr. Manuel Dávila Ortiz, la Sra. Gladys Esther Hamilton Morales y la Sociedad de Bienes Gananciales compuesta por ambos (en adelante, el matrimonio Dávila-Hamilton o los apelantes) mediante el recurso de epígrafe solicitándonos que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI), el 28 de enero de 2025, notificada ese mismo día. Mediante este dictamen, el foro primario declaró *Ha Lugar* a una moción de *Sentencia Sumaria* a favor del Consejo de Titulares del Condominio Costa Esmeralda (Consejo de Titulares o los apelados). Como consecuencia de esto, ordenó a los apelantes a pagar $31,391.28 por cuotas de mantenimiento, intereses, penalidades, derramas y primas de la póliza de seguro adeudados.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El 4 de octubre de 2023, el Consejo de Titulares incoó una demanda sobre cobro de dinero contra el matrimonio Dávila-Hamilton. Adujo, que los apelantes le adeudaban $27,105.74 por cuotas de mantenimiento, derramas, renovaciones de pólizas de seguro, intereses y penalidades.

Luego de varios trámites procesales, que no son necesarios pormenorizar, el 16 de febrero de 2024, el matrimonio Dávila-Hamilton presentó su *Contestación a Demanda*. En esencia, alegó que la deuda o parte de esta estaba prescrita, que la deuda fue pagada o satisfecha mediante pago en finiquito, y que la deuda no era líquida y exigible al no ser aceptada por el deudor. Por tanto, solicitó se declarara *No Ha Lugar* a la demanda en su contra.

Por otro lado, los apelantes, también presentaron un escrito intitulado *Moción de Desestimación al Amparo de la Regla 10.2(5).* Mediante esta, arguyeron que habían realizado el pago de lo adeudado mediante cheque número 103 por $1,727 como pago en finiquito. Ello, tras haber enviado el instrumento negociable con una inscripción que leía "*PAID IN FULL*" o pago en su totalidad. De manera que, a su entender, la parte apelada no expuso una reclamación que justificara la concesión de un remedio. Por lo que, solicitaron la desestimación de la demanda.

Por su parte, el Consejo de Titulares presentó un escrito intitulado *Oposición a Moción de Desestimación.* Fundamentó su oposición arguyendo que no aplicaba la figura del pago en finiquito al incumplirse con los requisitos normativos establecidos en el ordenamiento jurídico. Ello, al no existir controversia *bona fide* entre deudor y acreedor sobre la existencia de una reclamación líquida. Añadió que, tampoco se cumplió con el requisito de ofrecimiento de buena fe mediante declaración o acto que indique el pago total de la deuda. Razonó, además, que el pago de $1,727 no era un

ofrecimiento de buena fe que constituyera pago en finiquito para una deuda ascendente a $22,293. Además, argumentó que todo contrato de transacción que supere los $5,000 dólares, tiene que ser aprobado por el Consejo de Titulares.

El 22 de mayo de 2024, el TPI emitió una *Resolución* en la que declaró *No Ha Lugar* a la moción de desestimación presentada por el matrimonio Dávila-Hamilton. Esto, tras concluir que no se cumplió con los requisitos del pago en finiquito con el hecho de haber declarado unilateralmente en el cheque *"PAID IN FULL"*.

El 27 de junio de 2024, el Consejo de Titulares presentó una *Moción de Sentencia Sumaria.* Mediante esta, se esbozaron ocho (8) hechos incontrovertibles los que resultan suficientes para resolver la controversia de forma sumaria, sin necesidad de vista en su fondo, al amparo de la Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. III.[1] Esto, al razonar que no existía controversia sustancial de hechos materiales. A su entender, la controversia a resolverse por el TPI era determinar si, a la luz de los documentos sometidos en evidencia y las declaraciones juradas, se cumplía con el peso de prueba para establecer la inexistencia de una controversia genuina de hechos y si la deuda era una vencida, líquida y exigible. Por ello, señaló que procedía resolver el pleito sumariamente a favor del Consejo de Titulares y ordenar el pago de $31,391.28 adeudados al 20 de junio de 2024, más las costas y una suma razonable en honorarios.

El Consejo de Titulares adjuntó a su solicitud varios documentos, entre ellos: (1) Certificación Registral acreditativa de la titularidad del Apartamento P-202 por la parte demandada, la inscripción del mismo a su nombre en el Registro de la Propiedad y la descripción registral del apartamento; (2) Certificación Registral

---

[1] Véase, Apéndice del Recurso, a las págs. 81-84.

acreditativa de la inscripción en el Registro de la Propiedad del régimen de propiedad horizontal del Condominio Costa Esmeralda; (3) Copia de la escritura matriz de constitución del régimen de propiedad horizontal del Condominio Costa Esmeralda; (4) Copia del Reglamento del Condominio Costa Esmeralda; (5) Declaración jurada del Presidente de la Junta de Directores del Condominio Costa Esmeralda acreditativa del balance adeudado por los apelantes; y (6) Declaración jurada del contador externo del Condominio Costa Esmeralda estableciendo el monto adeudado por estos.

El 26 de agosto de 2024, el matrimonio Dávila-Hamilton presentó un escrito intitulado *Oposición a Solicitud de Sentencia Sumaria*. En esencia, se aceptaron siete (7) de los hechos propuestos por los apelados.[2] En este sentido, argumentó que existía controversia en cuanto a la cuantía de la alegada deuda, prescripción de la deuda, sobre si la deuda se pagó en su totalidad, si estaba vencida, y era líquida y exigible. De manera que, a su entender, no procedía resolver el pleito sumariamente. Los apelantes adjuntaron al petitorio copias de varias facturas y estados de cuentas del 2022 del sistema *Manage My Nest*, así como del cheque núm. 1131 por $1,727 fechado el 15 de diciembre de 2022.

El 28 de enero de 2025, el TPI emitió la *Sentencia* apelada declarando *Ha Lugar* a la moción de sentencia sumaria instada por el Consejo de Titulares y ordenó el pago de $31,391.28 a su favor. Según el foro primario, en la oposición al pedido sumario presentado por el matrimonio Dávila-Hamilton, solo se argumentó la alegada inconsistencia en el balance adeudado en las facturas generadas por el sistema *Manage My Nest* y el programa *Quickbooks* como controversia material. Asimismo, el foro *a quo* expresó que el

---

[2] *Íd.*, a la pág. 154.

"remanente de la oposición se reduce a argumentaciones e interpretaciones de la representación legal del demandado [apelantes]."[3] Así las cosas, el TPI concluyó que no existía controversia sustancial de hechos materiales y en el dictamen impugnado formuló las siguientes determinaciones de hechos:[4]

1. El demandado es el Sr. Manuel Dávila Ortiz, su esposa la Sra. Gladys Esther Hamilton Morales y la sociedad legal de gananciales constituida entre ambos. Son dueños y titulares registrales del Apartamento P-202 del Condominio Costa Esmeralda. Hecho admitido por el demandado en su contestación a la demanda.

2. La descripción registral del apartamento P-202 del Condominio Costa Esmeralda propiedad de la parte demandada es la siguiente:

...

Consta inscrito en el Registro de la Propiedad, Sección de Fajardo, al Tomo 141 de Ceiba, Folio 97, inscripción segunda (2da.), finca número 9076. Ver Certificación Registral emitida por el Registro de la Propiedad, Sección de Fajardo, acreditativa de la titularidad del apartamento P-202 y de su descripción registral.

3. El Condominio Costa Esmeralda fue sometido al régimen de la propiedad horizontal en virtud de la escritura número 250 otorgada en Ponce, Puerto Rico el 7 de agosto de 1999 ante el notario Manuel A. Frau Pietri y consta debidamente inscrita en el Registro de la Propiedad, Sección de Fajardo, a los Folios 222 y 153 de los Tomos 114 y 120 respectivamente, según inscripción cuarta (4ta.), finca número 8735. Véase la segunda Certificación Registral unida a la sentencia sumaria y la copia de la escritura número 250.

4. La cláusula D[É]CIMOQUINTO de la escritura matriz 250 se señala lo siguiente:

"DÉCIMO-QUINTO: La aquí compareciente presentará a todo adquirente de apartamentos un presupuesto estimado de los gastos comunes y un estimado de la cuota a pagarse por dicho concepto. Los titulares comenzarán a pagar la totalidad de sus respectivas cuotas una vez formalizada la compra de su apartamento. Una vez vendido el cincuenta y un por ciento (51%) de la totalidad de los apartamentos, la aquí compareciente convocará a una reunión de titulares para la creación de un Consejo de Titulares, a partir de cuya creación corresponderá al Consejo de Titulares fijar la cuota que estime propia y determinar lo relativo al presupuesto de administración".

5. Las cláusulas DÉCIMO-NOVENO y VIGÉSIMO-SEGUNDO de la escritura matriz número 250 disponen literalmente copiadas lo siguiente:
"DÉCIMO-NOVENO: Toda persona que adquiera la totalidad o parte de las unidades que componen el

---

[3] Íd., a la pág. 2.
[4] Íd., a las págs. 2-4.

complejo de edificios que se contrae esta escritura, estará sujeta a las disposiciones de esta escritura, así como del Reglamento de Administración y el reglamento interno del Consejo de Titulares antes indicados y la mera compra o adquisición de uno de los apartamentos del proyecto o el acto de ocupar cualquiera de éstos significará que las disposiciones de esta escri- tura [sic] y de dichos Reglamentos han sido aceptadas y ratificadas por tal comprador. El incumplimiento de cualesquiera de dichas disposiciones será motivo suficiente para que el Consejo de Titulares y/o la Asociación de Codueños o Condómines pueda incoar las acciones administrativas y/o judiciales correspondientes para reclamar compensación por cualquier daño causado y exigir, además, el cumplimiento estricto de las disposiciones tanto de esta escritura como las del Reglamento de Administración, así como de cualesquiera otras reglas o normas legalmente adoptadas por dichos codueños".

"VIGÉSIMO-SEGUNDO: Ningún codueño titular de unidad alguna en cualquiera de los edificios que forman en conjunto "COSTA ESMERALDA" estará exento de la responsabilidad de contribuir con la parte que le corresponda en los gastos comunales del condominio aún cuando renunciara al uso o disfrute de cualquiera o de todas las facilidades o elementos comunes generales o restringidos o haya abandonado su unidad particular".

6. Por su parte el Reglamento del Condominio Costa Esmeralda en su Sección 5.2 contiene la obligación de todo titular de un apartamento en el Condominio Costa Esmeralda de contribuir proporcionalmente con los gastos para la administración, conservación y reparación de los elementos comunes generales del edificio y en su caso, de los elementos comunes limitados, así como con cuantos más fueren legítimamente acordados. Véase del Reglamento del Condominio Costa Esmeralda.

7. **Al día de 20 de junio de 2024 la parte demandada adeudaba a la parte demandante Consejo de Titulares del Condominio Costa Esmeralda la suma de $31,391.28 por concepto de cuotas de mantenimiento, intereses, penalidades, derramas y primas de la póliza de seguro. Ver Estado de Cuenta del Apartamento P16-202 y las dos (2) declaraciones juradas, una del Presidente de la Junta de Directores y la otra del Contador externo del Consejo**. (Énfasis nuestro)

Insatisfecho con esta determinación, el matrimonio Dávila-Hamilton presentó una *Moción de Reconsideración.* En esta, se argumentó, en esencia, que la deuda no era exigible tras haber sido pagada en su totalidad como pago en finiquito y que no era líquida por esta no haber sido aceptada como correcta por el deudor. Añadió, que las facturas generadas por *Manage My Nest* contenían distintas cantidades para los años 2022 y 2024. Por ende, solicitó al

foro primario la reconsideración de su sentencia y que, en consecuencia, señalara vista para juicio en su fondo. Dicha moción fue declarada *No Ha Lugar* mediante la Resolución del 26 de febrero de 2025, notificada al día siguiente.

Todavía inconforme con el dictamen, el matrimonio Dávila-Hamilton acudió ante este foro revisor imputándole al tribunal primario haber incurrido en los siguientes errores:

> (1) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA POR LA VÍA SUMARIA EXISTIENDO CONTROVERSIAS DE HECHO MATERIALES SIN ADJUDICAR.
>
> (2) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA POR LA VÍA SUMARIA DECLARANDO LA DEUDA ALEGADA COMO VENCIDA, LÍQUIDA Y EXIGIBLE CUANDO DICHA DEUDA HA SIDO CUESTIONADA COMO INVÁLIDA POR EL DEUDOR.
>
> (3) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA POR LA VÍA SUMARIA CUANDO LA DEUDA ALEGADA HA SIDO SATISFECHA POR EL DEUDOR.
>
> (4) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA POR LA VÍA SUMARIA ACEPTANDO COMO VÁLIDOS DOCUMENTOS Y FACTURAS ALTERADAS EX POST FACTO DURANTE EL DESCUBRIMIENTO DE PRUEBA.

El 3 de abril de 2025, emitimos una Resolución concediéndole a la parte apelada el término de treinta (30) días para expresarse. El 4 de mayo, el Consejo de Titulares compareció mediante un *Alegato en Oposición de la Apelada Consejo de Titulares del Condominio Costa Esmeralda.* Así, nos damos por cumplidos y, a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Mecanismo de Sentencia Sumaria**

En nuestro ordenamiento jurídico, el mecanismo de la sentencia sumaria está gobernado por la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, la cual autoriza a los tribunales a dictar sentencia de forma sumaria si, mediante declaraciones juradas u otro tipo de prueba, se demuestra la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Específicamente, la Regla 36.1, 32 LPRA Ap. V, R. 36.1, atiende la solicitud de este tipo de disposición a favor de la parte reclamante en un pleito, mientras que la Regla 36.2, 32 LPRA Ap. V, R. 36.2, permite su petición a favor de la parte contra la que se reclama. En ambas reglas se establece lo siguiente:

**Regla 36.1. A favor de la parte reclamante**

Una parte que solicite un remedio podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.

**Regla 36.2. A favor de la parte contra quien se reclama**

Una parte contra la cual se haya formulado una reclamación podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

Entretanto, la Regla 36.3, 32 LPRA Ap. V, R. 36.3, dispone los requisitos de contenido de la moción de sentencia sumaria y de la contestación a esta, entre otras particularidades del procedimiento. Estos requisitos, como los párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, no son un mero formalismo, ni constituye un simple requisito mecánico sin sentido. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434 (2013).

En un primer plano, mediante el uso del mecanismo discrecional de la sentencia sumaria, se aligera la tramitación de un

caso, puesto que, ante la ausencia de controversia de hechos, al tribunal solo le corresponde aplicar el derecho. *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014). Así, sirve para propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no requieren la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una o varias controversias de derecho. *Íd.*

Este tipo de resolución procede en aquellos casos en los que no existen controversias **reales y sustanciales** en cuanto a los **hechos materiales y, por lo tanto, lo único que resta es aplicar el derecho**. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). La precitada Regla 36 de las de Procedimiento Civil, *supra*, dispone, en esencia, que para permitir este tipo de adjudicación resulta necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia surja que no existe controversia real y sustancial respecto a ningún hecho esencial y pertinente; y en adición, que se deba dictar sentencia sumaria como cuestión de derecho. *Íd.* En este sentido, solo procede dictarla cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y que el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Íd.*, a las págs. 109-110.

Es decir, por un lado, al promovente de la moción le toca establecer su derecho con claridad y demostrar que no existe controversia en cuanto a ningún hecho material, o sea ningún componente de la causa de acción. *Íd.*, a la pág. 110. Por el otro, al oponente le corresponde establecer que existe una controversia que sea real en cuanto a algún hecho material y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud de sentencia

sumaria. *Íd.* Cabe recordar que, en este contexto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Íd.* Mas específicamente, el oponente debe controvertir la prueba presentada y no debe cruzarse de brazos; pues de lo contrario, se expone a que se acoja la solicitud de sentencia sumaria y se le dicte en contra. *Ramos Pérez v. Univisión,* 178 DPR 200, 214-215 (2010). Esto significa que está obligado a contestar de forma detallada y específica aquellos hechos pertinentes que demuestran la existencia de una controversia real y sustancial que requiere dilucidarse en un juicio. *Íd.*, a la pág. 215. En este ejercicio, debe presentar declaraciones juradas o documentos que pongan en controversia los hechos alegados por el promovente, recordando que tampoco puede descansar en meras alegaciones, sino que debe proveer evidencia sustancial de los hechos materiales en disputa. *Íd.*

No obstante, no oponerse a la solicitud de sentencia sumaria no implica ni que procederá dictarla obligatoriamente, si existe una controversia legítima sobre un hecho material, ni que corresponderá dictarla a favor de su proponente si no procede en derecho. *Íd.*

Ahora bien, se han establecido ciertas reglas limitantes de la discreción en el uso de la moción de sentencia sumaria. Por un lado, la determinación en cuanto a esta debe guiarse por un principio de liberalidad a favor de la parte que se opone, lo cual persigue evitar la privación del derecho de todo litigante a su día en corte cuando existen controversias de hechos legítimas y sustanciales que deben ser resueltas. *Íd.*, a las págs. 216-217. Por el otro, como norma general, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una

controversia sobre algún hecho material y esencial; o (4) cuando como cuestión de derecho no procede. *Oriental Bank v. Perapi*, supra, a las págs. 26-27. Dicho esto, cabe indicar que la moción de sentencia sumaria no está excluida en ningún tipo de pleito, puesto que, sin importar cuán complejo sea un pleito, puede dictarse si de una moción de sentencia sumaria bien fundamentada surge que no hay controversia sobre hechos materiales. *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 112.

En lo relativo al ejercicio de la facultad revisora de este Tribunal de Apelaciones, sobre la procedencia de la sentencia sumaria, **debemos utilizar los mismos criterios que el Tribunal de Primera Instancia**. *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 115. En *Meléndez González,* el Tribunal Supremo atemperó este estándar a las exigencias de las nuevas Reglas de Procedimiento Civil y a lo que ya había establecido hace una década en *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). Así las cosas, consignó el siguiente estándar:

> "Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo, supra*, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia **y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo**. La revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición **cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civi**l, supra, y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

> Tercero, **en el caso de revisión de una Sentencia dictada sumariamente**, el Tribunal de Apelaciones **debe revisar si en realidad existen hechos materiales en controversia**. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
>
> Cuarto y, por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia **aplicó correctamente el Derecho a la controversia**." (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 118-119.

**La Causa de Acción en Cobro de Dinero**

En acciones de cobro de dinero "[e]l demandante sólo tiene que probar que existe una deuda válida, que la misma no se ha pagado, que él es el acreedor y los demandados sus deudores". *General Electric v. Concessionaires, Inc.,* 118 DPR 32, 43 (1986). El Tribunal Supremo ha expresado que, cuando se presenta una demanda en cobro de dinero, la parte demandante debe alegar que la deuda reclamada es una líquida, que está vencida y es exigible. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950). **Una deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada"**. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108-109 (2021); *Ramos y otros v. Colón y otros*, *supra,* pág. 546; *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Es decir, que **"la deuda es líquida cuando se sabe cuánto es lo que se debe"**. *Ramos y otros v. Colón y otros*, supra, pág. 546. Nuestro Tribunal Supremo ha expresado que: "El vocablo 'líquida' en relación con una cuenta, en lenguaje corriente significa **el saldo 'o residuo de cuantía cierta que resulta de la comparación del cargo con la data'**." *Guadalupe v. Rodríguez,* supra, 966 (1950).

En cuanto al término "exigible refiriéndose a una obligación, significa que puede demandarse su cumplimiento." *Carazo v. Srio. De Hacienda*, 118 DPR 306, 315 (1987); *Guadalupe v. Rodríguez*, supra, a la pág. 966. Para determinar si las deudas están vencidas se debe atender al carácter de las mismas, es decir, si son pagaderas desde luego, como ocurre con las puras y las sujetas a condición resolutoria, o si son pagaderas cuando se venza un plazo o se cumpla una condición, si están sujetas a condición suspensiva. Artículo 1150, 31 LPRA sec. 3222; J.R. Vélez Torres, *Derecho de Obligaciones*, Ed. 2da, 1997, págs. 220-221.

Una deuda es líquida, vencida y, por tanto, exigible cuando por la naturaleza de la obligación o por haberlo requerido el acreedor, la deuda debe ser satisfecha. En resumen, la deuda es líquida cuando se sabe cuánto es lo que se debe.

**Pago en Finiquito**

El pago en finiquito ("*accord and satisfaction*"), en nuestro ordenamiento, es una forma de extinguir obligaciones. *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, a la pág. 159.

Para que se configure la figura o aplique el pago en finiquito-también será requisito **"la ausencia de opresión o indebida ventaja de parte del deudor sobre su acreedor**". *A. Martínez & Co. v. Long Const. Co, 101 DPR 830*, 835 (1973). El Tribunal Supremo ha recalcado en **la importancia de evaluar con detenimiento el factor de la ausencia de opresión de la deudora sobre su acreedora cuando se invoca la doctrina de pago en finiquito**. *Íd.,* a la pág. 833.

Al determinar si la figura del pago en finiquito se concreta o no, el Tribunal Supremo ha sido muy riguroso en la evaluación del concurso de todos sus requisitos. Sobre el segundo requisito, entiéndase, la existencia de una reclamación ilíquida o sobre la cual exista controversia *bona fide*, el Tribunal Supremo ha determinado

que, **en ausencia de este requisito, no se concreta la figura de pago en finiquito**. *Pagán Fortis v. Garriga,* 88 DPR 279, 283-284 (1963). A estos efectos, aun cuando no haya duda sobre el ofrecimiento ni de la aceptación del pago, **no procede esta doctrina si no existía una reclamación ilíquida o una controversia *bona fide*.**

De otra parte, y con relación al segundo requisito, el Tribunal Supremo estableció que, "el ofrecimiento de pago tiene que ir acompañado por declaraciones o actos que claramente indiquen que el pago ofrecido por el deudor al acreedor es en pago total, completo y definitivo de la deuda existente entre ambos...". *HR Elec., Inc. v. Rodríguez,* 114 DPR 236, 242 (1983). A su vez, la doctrina requiere que el ofrecimiento sea de buena fe. *López v. South PR Sugar Co.,* 62 DPR 238, 245 (1943); *H.R. Elec. v. Rodríguez,* supra, en la pág. 240. En fin, el ofrecimiento del pago debe sujetarse a la condición de que, de aceptarlo, se entenderá en saldo de su reclamación. *HR Elec., Inc. v. Rodríguez,* supra. Véase, además, *Gilormini Merle v. Pujals Ayala,* 116 DPR 482, 484-485 (1985).

A su vez, el Tribunal Supremo ha resuelto **que la aceptación del ofrecimiento se perfecciona cuando el acreedor retiene el cheque y consiente bajo la premisa de que el instrumento fue remitido en concepto de pago y saldo total de la obligación.** *A. Martínez & Co.,* supra, en la pág. 834 Sin embargo, **para que la retención del cheque constituya una aceptación no puede haber opresión o indebida ventaja de parte del deudor**. *Íd.*

De otra parte, la Ley núm. 208-1995, *Ley de Transacciones Comerciales de Puerto Rico*, 19 LPRA secs. 401-2409, codifica, actualmente, **los requisitos sobre el pago en finiquito mediante instrumentos negociables (como este caso mediante el uso de un cheque)**. En lo pertinente, la Sección 2-311, inciso (a) requiere como condición para que se configure el pago en finiquito la

existencia de los siguientes requisitos: (**1) que el deudor ofrezca de buena fe el instrumento al reclamante en pago total de la reclamación, (2) la existencia de una reclamación ilíquida o una controversia *bona fide*, y (3) que el reclamante haya obtenido el pago del instrumento**.

Asimismo, la *Ley de Transacciones Comerciales*, supra, **impone restricciones para que se configure la figura de pago en finiquito**. Sobre el requisito del ofrecimiento del instrumento negociable en pago total de una reclamación, requiere que se haga de **buena fe.** La propia *Ley de Transacciones Comerciales*, supra, define "buena fe" como "la honestidad de hecho y **la observancia de las normas comerciales razonables de trato justo**". 19 LPRA sec. 503 (Énfasis nuestro)

**Ley de Condominios de Puerto Rico**

Los titulares de los apartamentos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales. Artículo 59 de la Ley 129-2020, conocida como *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1923d. A su vez, dicho artículo dispone que:

> La cantidad proporcional con que debe contribuir cada titular a los gastos comunes se determinará, fijará e impondrá al principio de cada año calendario o fiscal y vencerá y será pagadera en plazos mensuales. Cada plazo vence el primer día de cada mes. La administración podrá cobrar una penalidad del diez por ciento (10%) de la cuota impagada si transcurren quince (15) días del vencimiento de la mensualidad. [...] Si la falta de pago excede de tres (3) o más plazos, podrá conllevar una penalidad adicional equivalente al uno por ciento (1%) mensual del total adeudado. La Junta de Directores no está obligada a recibir pagos parciales.
>
> **La deuda de un titular por concepto de cuotas de mantenimiento para gastos comunes se le podrá reclamar judicialmente luego de ser requerido de pago mediante correo certificado con acuse de recibo y de éste no cumplir el pago en el plazo de vencimiento**. (Énfasis nuestro)

De esta forma, la *Ley de Condominios, supra,* faculta al Consejo de Titulares al cobro de cuotas de mantenimiento y otros gastos comunes. Igual, permite la imposición de penalidades e intereses y reclamar por la vía judicial.

En el Artículo 39 del estatuto, 31 LPRA sec. 1922k, inciso (b)(6), se preceptúa que:

> Todo titular deberá contribuir con arreglo al porcentaje de participación fijado a su apartamento en la escritura de constitución, y a lo especialmente establecido, conforme al inciso (f) del Artículo 49 de esta Ley, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades, incluidas las derramas, primas de seguros, el fondo de reserva, o cualquier otro gasto debidamente aprobado por el Consejo de Titulares.

De esta manera, queda bastante clara la obligación de los condómines en el pago de cuotas de mantenimiento de áreas comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades, incluidas las derramas, primas de seguros, el fondo de reserva, o cualquier otro gasto debidamente aprobado por el Consejo de Titulares.

Incluso, en reiteradas ocasiones, el Tribunal Supremo ha establecido la importancia de la cuota de mantenimiento, definiéndola como esencial para la sostenibilidad y funcionamiento del régimen de Propiedad Horizontal. *Asoc. C. Quadrangle Med. Ctr. v. Ramírez,* 154 DPR 699, 711 (2001).

**III.**

En sus cuatro señalamientos de error, la parte apelante nos planteó que el foro primario erró al dictar sentencia por la vía sumaria al: (1) existir controversias de hecho materiales sin adjudicar; (2) declarar la deuda alegada como vencida, líquida y exigible cuando dicha deuda ha sido cuestionada como inválida por el deudor; (3) haber sido satisfecha la deuda alegada por el deudor y; (4) aceptar como válidos documentos y facturas alteradas *ex post facto* durante el descubrimiento de prueba. Por encontrarse

relacionados entre sí, y al haber sido discutidos conjuntamente en el recurso de apelación, se discutirán todos los señalamientos de errores de manera conjunta.

En esencia, los apelantes sostienen que no procedía la resolución del conflicto por la vía sumaria, toda vez que existía un hecho material en controversia. Específicamente, argumentó que erró el TPI al concluir que no existía controversia con la suma adeudada, ni la alegada discrepancia con las facturas de la aplicación digital de *Manage My Nest* en el 2022 y las facturas de *Quickbooks.* En ese sentido, intenta refutar la conclusión del foro primario en la *Sentencia* apelada donde determinó que:

> Tras analizar la totalidad del expediente, concluimos que no existe tal controversia con la suma adeudada por la parte demandada por concepto de cuotas de mantenimiento entre las facturas que se producen por la plataforma de *Manage My Nest* y la factura que produce el sistema de contabilidad externa del Consejo a través del programa de *Quickbooks.* La factura de *Manage my Nest* incluye el año natural en curso y la de *Quickbooks* es el historial de todos los años.

Argumenta que, primero, existe discrepancia en la existencia de múltiples facturas de la plataforma de *Manage My Nest* en 2022 y las facturas de *Quickbooks* presentadas en el 2024. Segundo, que, como consecuencia de esas diferencias, la deuda no es líquida porque el deudor no la acepta, al entender que se extinguió tal obligación mediante pago en finiquito y; por lo tanto, no existe deuda y no está vencida ni es exigible. Adelantamos que no le asiste la razón. Veamos.

Como cuestión de umbral, al ejercer nuestra función revisora respecto a una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de las de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra;* (3) revisar si en realidad existen hechos

materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.3 de las de Procedimiento Civil, *supra*, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; (4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Roldán Flores v. M. Cuebas*, 199 DPR 664, 679 (2018).

Tras un severo análisis del expediente, examinadas las mociones de solicitud de sentencia sumaria y su oposición, concluimos que ambas partes cumplieron con las exigencias esbozadas en la Regla 36 de las de Procedimiento Civil, *supra*. Por lo que, el foro primario, podía considerar los escritos y resolver el caso de manera sumaria al interpretar el derecho.

Cabe destacar que, en su escrito de apelación, el matrimonio Dávila-Hamilton al atacar expresamente el raciocinio del TPI antes descrito, relativo a las facturas que se producen por la plataforma de *Manage My Nest* y el sistema de contabilidad externa del Consejo a través del programa de *Quickbooks*, podemos inferir que solamente se pretende rebatir la determinación de hechos número 7 de las realizadas por el foro primario relativa a la cuantía de la deuda. Por lo que, acogemos y hacemos formar parte integral de esta sentencia el resto de las determinaciones hechas por el foro de primera instancia.

Al respecto, la determinación núm. 7 de la *Sentencia* apelada lee de la siguiente manera:

> 7. Al día de 20 de junio de 2024 la parte demandada adeudaba a la parte demandante Consejo de Titulares del Condominio Costa Esmeralda la suma de $31,391.28 por concepto de cuotas de mantenimiento, intereses, penalidades, derramas y primas de la póliza de seguro. Ver Estado de Cuenta del Apartamento P16-202 y las dos (2) declaraciones juradas, una del Presidente de la Junta de Directores y la otra del Contador externo del Consejo.

Entendemos menester expresar que los argumentos de los apelantes nos parecen frívolos. En primer lugar, porque de un pequeño cálculo resulta obligatorio concluir que, tal y como coligió el TPI, las facturas de *Manage My Nest*, como aplicación para facilitar el pago de las cuotas de mantenimiento, representan lo adeudado por los apelantes en el año natural 2022 y no la totalidad de las facturas que aparecen en *Quickbooks*. Además, la factura así lo expresa claramente. De hecho, aún sin la realización de un cómputo, resultaría imposible determinar que, a razón del incumplimiento de pagos de entre $133 a $157 mensuales por más de diez años, la totalidad de la deuda sería $1,727. **Los tribunales no podemos ser tan inocentes como para creer declaraciones que nadie más creería**. *In re: Bravo García*, 2025 TSPR 13, 215 DPR ___ (2025). *Pueblo v. Rosario Paredes*, 209 DPR 155 (2022) (citando a *Pueblo v. Luciano Arroyo*, 83 DPR 573, 582 (1961)).

Por su parte, del análisis del caso y la jurisprudencia antes reseñada, es forzoso entender que la deuda reclamada para el cobro, por las diferentes partidas adeudadas, es una líquida debido a que **la cuantía de dinero debida es "cierta" y "determinada"**. *RMCA v. Mayol Bianchi*, supra, a las págs. 108-109. Es decir, **"se conoce qué se debe y cuánto se debe"**. *Heinrick and others, Partners, etc. v. Englund*, 26 N. W. 122 (Minn., 1885) y *Nelson v. Zahn Grain CVo.*, 191 Okla 181 (1942) (casos citados en *Guadalupe v. Rodríguez*, supra.) Por lo que, no nos convencen los argumentos incluidos en el recurso que buscan impugnar las facturas presentadas por el Consejo de Titulares, en especial las generadas por el sistema *Manage My Nest*, debido a que entienden que reflejan cantidades distintas para los años 2022 y 2024. Esto, intentando legitimar una controversia de la eficacia de la deuda que a todas luces es inexistente.

Nuevamente precisa señalar que los apelados, en la *Moción de Sentencia Sumaria,* incluyeron las facturas que acreditan fehacientemente la cuantía de la deuda ascendente a $31,391.28; así como la declaración jurada del Sr. Jerry Rodríguez Espola, Contador que rinde servicios de contabilidad del Consejo de Titulares, que así lo confirma. Lo que no fue controvertido adecuadamente por el matrimonio Dávila-Hamilton. Más aún, del estado producido por *Quickbooks* surge que, el 19 de enero de 2023, se acreditó a la deuda el pago por $1,727 emitido por los apelantes mediante el cheque núm. 103.[5]

Agregamos a lo anterior que, los apelantes, en los documentos incluidos en la oposición a la sentencia sumaria, prácticamente ratifican los anejados en el petitorio sumario. Por ejemplo, los montos adeudados en los estados del programa *Manage My Nest* para el periodo del 06/01/2022 al 11/01/2022 por $26,339.94, $26,496.94, $26,653.94, $26,967.94, y $27,124.94 de los apelantes reflejan los mismos balances debidos incluidos en el estado de sistema *Quickbooks* por el Consejo de Titulares.[6] Por ende, enfatizamos que los apelantes fallaron en controvertir la validez de la deuda, reclamada en la demanda instada por el Consejo de Titulares, insistiendo en discrepancias en las facturas del sistema *Manage My Nest.* No podemos ignorar, como bien señalan los apelados en su oposición ante nuestra consideración, que en ninguna parte existen facturas para el 2024, más bien, todas indican balances para el 2022. Así, esta deuda se convirtió en una vencida, líquida y exigible. De igual manera, no obviemos que la

---

[5] Véase Apéndice del Recurso, a la pág. 140. Se hace importante advertir que desde la *Moción de Desestimación al Amparo de la Regla 10.2(5)* instada por los apelantes el 29 de febrero de 2024, se hace referencia al cheque núm. 103 por $1,727 del 15 de diciembre de 2022. No obstante, en el recurso se hace alusión al cheque núm. 1131 de la misma fecha por igual cantidad según discutido en la *Oposición a Solicitud de Sentencia Sumaria.* El cual no fue cobrado según el Estado mencionado. Véase Apéndice del Recurso, a las págs. 41-45 y 152, 155 y 164.

[6] *Íd.*, a las págs. 166-170, y 140, respectivamente. Advertimos que se suman a los balances previos $157 mensuales.

obligación del pago de cuotas está establecida en la ley regente, así como en la Escritura Matriz Núm. 250 en la que se sometió el Condominio Costa Esmeralda al régimen de propiedad horizontal.

Por otro lado, el matrimonio Dávila-Hamilton levanta como controversia que se extinguió la obligación monetaria mediante el pago en finiquito. No le asiste la razón. En primer lugar, el TPI, mediante la *Resolución* fundamentada, dictada y notificada el 22 de mayo de 2024, adjudicó la inaplicabilidad del pago en finiquito.

En dicho dictamen el foro *a quo* razonó, y este tribunal así lo ratifica, que en el caso de epígrafe no se configuró ninguno de los requisitos establecidos en la doctrina del pago en finiquito. No se demostró en el foro primario, ni se muestra ante este foro apelativo, **la existencia de una controversia *bona fide* entre el deudor y el acreedor sobre la existencia de una reclamación ilíquida.** En ausencia de este requisito, no se concreta la figura de pago en finiquito. *Pagán Fortis v. Garriga, supra,* a las págs. 283-284.

Del mismo modo, sobre la supuesta declaración del ofrecimiento del pago como total, completo y definitivo de la deuda escrita en el cheque núm. 103 como "PAID IN FULL", esta es la mejor evidencia de que no se actuó bajos los preceptos de la buena fe.[7] Nos preguntamos, cómo es posible razonar que la factura cobrando $1,727, adeudados por once (11) meses **del año natural 2022**, era el importe total de lo adeudado por más de diez (10) años en atraso. Esto, máxime cuando el documento claramente detalla los meses del **2022** que se están facturando, así como el balance previo adeudado. De ser como pretenden hacernos creer los apelantes, estaríamos ante una cantidad líquida, por ser cierta y determinada, sobre la que no existe controversia *bona fide* y **por la que no habría necesidad de levantar el pago en finiquito**. Por ende, no cabe

---

[7] Véase, nota al calce 5.

duda de que, al intentar finiquitar una deuda líquida de $27,438.94 (a la fecha del acto) mediante el pago de $1,727, demuestra la ausencia de una actuación de buena fe que resulta en opresión o indebida ventaja de parte del deudor sobre su acreedor. A su vez, en todo caso, la antedicha declaración expresada en el cheque núm. 103 -por su lenguaje- lo único que certificaría es el pago total de la factura de *Manage My Nest* por los meses del año natural 2022 cobrados, cantidad que fue acreditada como abono al total de la deuda.

Por último, el 18 de enero de 2023, el Consejo de Titulares, una vez recibido, y **previo a cobrar el cheque núm. 103 por $1,727**, le remitió una comunicación, en respuesta a la carta suscrita por el señor Dávila[8], en la que se le aclaró que a la fecha de la misiva, la deuda ascendía a $27,438.94, y en especial, se le advirtió que "Estamos aceptando la cantidad emitida de [$]1,727.00 como abono de la deuda total."[9] En este punto, no se configura el elemento de la antedicha figura jurídica que exige que el acreedor retiene el cheque consciente de que el pago fue remitido en concepto de pago y saldo total de la obligación.

En resumen, los apelantes incumplen crasamente con todos los requisitos de la doctrina del pago en finiquito y los establecidos en la *Ley de Transacciones Comerciales de Puerto Rico*, antes citada, al utilizar un cheque como método para invocar la doctrina.

Reiteramos que las facturas de *Quickbooks* eran claras en cuanto a los meses y a la cantidad total adeudada por el matrimonio Dávila-Hamilton. De manera que, como bien adjudicó el foro primario, no existe ninguna controversia con la suma adeudada por los apelantes, según surge de las facturas que se producen por la plataforma de *Manage My Nest* y las generadas por el sistema de

---

[8] *Íd.*, a la pág. 77.
[9] *Íd.*, a la pág. 75. La fecha de la carta es 18 de enero de 2023.

contabilidad externa del Consejo de Titulares a través del programa *Quickbooks*. Esto, debido a que las facturas *Manage My Nest* cuestionadas incluyen el año natural 2022, y la de *Quickbooks* es el historial de todos los años incluyendo el mismo.

En fin, no habiéndose controvertido, ni existiendo controversia real y sustancial de hechos materiales sobre el cobro de dinero por ser la deuda una líquida, vencida y exigible, nos es forzoso concluir que los errores señalados no fueron cometidos por el Tribunal de Primera Instancia.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones